Dominique Jerome GREEN, Appellant,

v.

STATE of Texas, Appellee.

No. 71762.

Court of Criminal Appeals of Texas.

Sept. 11, 1996.

Rehearing Denied Nov. 13, 1996.

Michael P. Fosher, Brent Newton, Charles L. Brayden, amicus curiae, for appellant.

Kimberly Aperauch Stelter, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for appellee.

## OPINION

MALONEY, Justice.

Appellant was convicted of capital murder pursuant to Tex. Penal Code Ann. § 19.03(a)(2). The jury made findings on the three special issues and the trial court imposed the sentence of death. Direct appeal to this Court is automatic. Tex.Code Crim. Proc. Ann. art. 37.071(2)(h). Initially, we sustained appellant's first point of error, abated the appeal, and remanded the cause to the trial court so that it could enter its findings of fact and conclusions of law regarding appellant's confession. *Green v. State,* 906 S.W.2d 937 (Tex.Crim.App.1995). We now address appellant's remaining points of error.

Appellant does not challenge the sufficiency of the evidence to support the conviction; we dispense with a recitation of the facts of the case.

In points of error two through nine, appellant claims his October 21, 1992, statement was obtained in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.[1] We will first address his second, third, eighth, and ninth points of error.

Appellant was arrested October 17, 1992, in connection with an aggravated robbery unrelated to the murder in issue here. Appellant was advised of his rights pursuant to Tex.Code Crim. Proc. Ann. art. 38.22, § 2(a). He waived his rights and made a statement concerning the robbery to the police, and was then charged with aggravated robbery. A few days later appellant was taken to a magistrate who appointed a lawyer to represent appellant on the aggravated robbery charge. Subsequently, Harris County authorities were able to determine through ballistic comparisons that a gun recovered from the car in which appellant was riding when he was arrested for the aggravated robbery had fired a bullet found at the scene of the murder in issue here. Appellant was transferred from the Harris County jail to the Houston Police Department Homicide Division for questioning specifically about the murder. Appellant's court-appointed attorney in the robbery case was not informed of this questioning. Appellant once again received his statutory warnings, which he waived, and gave a statement to the police in which he admitted being present at the scene of the murder and serving as a "lookout." Appellant's motion to suppress this statement was denied and the statement was admitted into evidence over appellant's objection.

■ Appellant contends that admission of his statement violated his Fifth and Sixth Amendment rights to counsel. Appellant claims that his Fifth and Sixth Amendment rights to counsel were invoked when he requested a lawyer at his preliminary appearance before the magistrate in connection with his aggravated robbery charge, and that the

---

1. Appellant also asserts introduction of the statement violated his rights under Article I, § 10 of the Texas Constitution and Article 38.22, § 6 of the Texas Code of Criminal Procedure. He argues that Article I, § 10 and Article 38.22, § 6 should be interpreted more broadly than the Fifth and Sixth Amendments of the United States Constitution. Because appellant has offered virtually no argument or authority in support of his position, we do not address these contentions.

absence of his appointed lawyer at the October 21st interrogation about the murder violated both his Fifth and Sixth Amendment rights. The record demonstrates that appellant requested and was appointed an attorney when he appeared before the magistrate.

In support of his Fifth Amendment claim, appellant relies on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). In *Edwards v. Arizona*, the United States Supreme Court held that once a suspect invokes his Fifth Amendment right to counsel, he cannot be further interrogated by the police until counsel has been provided, or the suspect himself initiates further communication with the police. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85. In *Arizona v. Roberson*, the Supreme Court held that the rule in *Edwards* also applies to situations in which a suspect invokes his Fifth Amendment right to counsel regarding one crime and is then interrogated about an unrelated crime. *Roberson*, 486 U.S. at 685–88, 108 S.Ct. at 2100–02.

■ In *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the United States Supreme Court held that an accused's Sixth Amendment right to counsel at an initial appearance does not constitute an invocation of his Fifth Amendment right to counsel. Although the Fifth Amendment right to counsel is non-offense specific, and once asserted prevents any further interrogation without the presence of counsel, the Fifth Amendment right cannot be inferred from the invocation of the Sixth Amendment right in view of the differing purposes of the two rights. *Id.* at 177–78, 111 S.Ct. at 2208–09. The invocation of an accused's Fifth Amendment right, the Supreme Court reasoned, "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in *dealing with custodial interrogation by the police*." *Id.* at 178, 111 S.Ct. at 2209 (emphasis in original). The Court held that "requesting the assistance of an attorney at a bail hearing does not bear that construction." *Id.*

Here, appellant argues he invoked his Fifth Amendment right to counsel when he appeared before the magistrate and "expressly asked" the magistrate to appoint him an attorney. However, appellant does not claim, nor does the record demonstrate, that appellant was subjected to custodial interrogation when he appeared before the magistrate and was appointed counsel in connection with the robbery. Like the hearing in *McNeil*, appellant's request for an attorney at his appearance associated with the robbery was not an expression for assistance in dealing with custodial interrogation by the police. Furthermore, at no time did appellant request the assistance of counsel in response to police questioning of him concerning his October 21st statement. We find appellant failed to invoke his Fifth Amendment right to counsel. *McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209; *see Dinkins v. State*, 894 S.W.2d 330, 351 (Tex.Crim.App.1995) (holding Fifth Amendment right to counsel "is considered invoked [when] a person indicates he or she desires to speak to an attorney or have an attorney present during questioning").

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Unlike the Fifth Amendment right to counsel, the Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Green v. State*, 872 S.W.2d 717, 719 (Tex. Crim.App.1994). It is undisputed that when appellant was charged with aggravated robbery, his Sixth Amendment right to counsel attached and was invoked with respect to that offense. Appellant's invocation of his Sixth Amendment right to counsel in connection with the robbery charge, however, does not impact on appellant's Sixth Amendment right relating to the murder. In *McNeil*, the Supreme Court held that the rule in *Roberson*, which extends the invocation of the Fifth Amendment right to counsel from one crime to another, does not apply to the Sixth Amendment right to counsel. *McNeil*, 501

U.S. at 181, 111 S.Ct. at 2210. The Court reasoned that because the Sixth Amendment is offense-specific "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced,...." *Id.* at 175, 111 S.Ct. at 2207. Therefore, appellant's invocation of his Sixth Amendment right to counsel with respect to the robbery offense did not extend to the murder offense. Appellant concedes that he had not been charged with murder when the police questioned him about that crime. It is important to note that appellant was only being questioned and that the inquiry was restricted to questions about the murder. Because the Sixth Amendment right to counsel attaches only after adversary judicial proceedings are initiated, and appellant had not been charged with the murder at the time he claims his Sixth Amendment right to counsel arose, his argument must fail. Points of error two, three, eight, and nine are overruled.

■ In point of error four, appellant alleges that his statement was inadmissible because he invoked his Fifth Amendment right to counsel while he was being questioned about the murder. Specifically, appellant claims he told the interrogating police officers that he was represented by counsel, but they continued to question him outside the presence of his attorney. At the hearing to suppress his confession, appellant testified that he asked the officers to call his lawyer and gave them his attorney's business card, but the officers told him they could not locate his attorney. He further testified that the police handed him a pre-written statement which they told him to sign. Another individual also being questioned about the murder, Mark Porter, testified that when he and appellant first arrived at the police station they were placed in a room together, but that the officers did not talk to him and appellant together. The officers then took Porter to another place and began questioning him about the murder. He also testified that after both he and appellant gave their written statements to the police, they were again placed in a room together. The police began questioning appellant further about the murder and at this point, Porter testified, he

heard appellant ask the officers to get his attorney.

The officers present when appellant gave his statement testified that appellant was repeatedly given his *Miranda* warnings and that he repeatedly waived his rights. The interrogating officer, Sergeant Novak, testified that appellant and Porter were "split up" and questioned separately. Novak was aware appellant had been charged with aggravated robbery and had an attorney representing him on the charge, but that he did not discuss that offense with appellant. Novak testified appellant voluntarily waived his right to counsel and agreed to talk to Novak about the murder offense. Sergeant Maxey, who was present during Novak's interview of appellant, testified that he told appellant he was being questioned in connection with a capital murder investigation. Maxey further testified that appellant received his *Miranda* warnings and at no time did he tell the officers that he had an attorney nor did he request one. Sergeant Weber, another officer involved in the murder investigation, testified that after appellant and Porter arrived at the police station, he took custody of Porter and transferred him to a room for questioning. There was no conversation between appellant, Porter, and the officers while they were all together. Later, Weber went to the room where appellant was questioned to witness appellant's signature on his written statement. The required warnings appeared on the statement and were initialed by appellant. The officers denied handing appellant a pre-written statement to sign.

■ At a hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge may choose to believe or disbelieve any or all of a witness' testimony. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). As such, this Court is not at liberty to disturb any finding which is supported by the record. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.

Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991).

In the instant case there was conflicting testimony as to whether appellant requested his attorney. The trial court chose to believe the officers' testimony and disbelieve appellant and Porter. "Because the trial court is in the best position to evaluate the testimony, we must defer to the trial court's findings." *Davis v. State,* 829 S.W.2d 218, 220 (Tex. Crim.App.1992). Since the officers' testimony shows that appellant did not request his attorney, the trial court's findings that appellant voluntarily waived his rights and gave his statement, that at no time did he ask for a lawyer or invoke any of his rights as set out in Article 38.22, § 2(a), and that at the time of the October 21st interrogation, appellant had not invoked his Fifth Amendment right to counsel, are supported by the record. Point of error four is overruled.

In points of error five through seven, appellant contends that the admission of his statement violated his Fifth and Fourteenth Amendment rights because the totality of the circumstances surrounding the custodial interrogation rendered his statement involuntary. A confession is involuntary or coerced if the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will. *Arizona v. Fulminante,* 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302 (1991). Appellant argues that the interrogating officer intentionally misinformed him that there was an eyewitness to the murder and that such misinformation caused his confession to be involuntary. The evidence demonstrates that Sergeant Novak made the statement, which he knew to be untrue, in an effort to induce appellant to confess during questioning.[2]

Misrepresentations made by the police to a suspect during an interrogation is a relevant factor in assessing whether the suspect's confession was voluntary, but it is insufficient to render an otherwise voluntary confession inadmissible. *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1424–25, 22 L.Ed.2d 684 (1969). The misrepresentation must be viewed in the context of the totality of the circumstances. *Id.* Some types of police deception employed during custodial interrogation, designed to elicit a confession from the accused, are constitutionally permissible. *See id.* The focus is on whether the behavior of the State's law enforcement

2. The following testimony from the suppression hearing shows that Novak intentionally misinformed appellant that there was an eyewitness to the murder. The robbery referred to in this testimony was not the robbery for which appellant was already facing charges.

A: [Sergeant Novak] Well, I told [appellant] there was a witness to this capital murder, and that being the white male who had been robbed, or the attempted robbery just prior to our complainant being shot, and that would be a Mr. Fromme.

❖ ❖ * ❖ * *

Q: [Prosecutor] You now know from your investigation, do you not, that Mr. Fromme was not a witness to the shooting, do you not?
A: I knew at the time that Mr. Fromme was not a witness to any shooting.
Q: So wouldn't you agree with me that what you told Mr. Green was not true?
A: I would agree to that.
Q: All right. Do you believe that you're entitled to tell things to a prospective confessor that are not true?
A: I see no problem with it.
Q: The purpose of telling him that, was it not, was to at least in your mind improve the chances of you getting a written statement from him, wasn't it?

A: That, in my mind, would help me determine whether or not he was involved in this case.
Q: You would agree with me then the purpose of telling him something about there being a witness when you knew there was not a witness would be a technique to encourage him to talk? Would you agree with that?
A: I would consider Mr. Fromme a witness, because Mr. Fromme had been robbed moments before. And Mr. Fromme had told me personally that he observed the complainant's pickup truck drive up into the parking lot. He told me he had gone only a minimum distance when he heard what sounded to him like a gunshot. He assumed the same individuals who attempted to rob him had robbed [the murder victim].

❖ * * ❖ * ❖

Q: And you would agree with me, however you want to characterize it, that what you told Mr. Green was intended to convey that there was an eyewitness to the fact of the actual shooting, which is not true?
A: If that's what he construed it to mean, I guess you could say it was, yes.

officials was such as to overbear the will of the accused and bring about a confession not freely determined. *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961).

 Of the numerous types of police deception, a misrepresentation relating to an accused's connection to the crime is the least likely to render a confession involuntary. *Holland v. McGinnis,* 963 F.2d 1044, 1051 (7th Cir.1992). The police conduct complained of here, concerning the strength of the prosecution's case against appellant, falls into this category. Novak's statement that there was an eyewitness to the murder directly relates to appellant's guilt. We agree with the Seventh Circuit Court of Appeals' analysis of this type of misrepresentation in *Holland:*

> [i]nflating evidence of [the defendant's] guilt interfered little, if at all, with his 'free and deliberate choice' of whether to confess, *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986), for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime. In other words, the deception did not interject the type of extrinsic considerations that would overcome [the defendant's] will by distorting an otherwise rational choice of whether to confess or remain silent.

*Holland,* 963 F.2d at 1051.

Other types of deception which are likely to lead to involuntary confessions are based on extrinsic considerations. For example, in *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), the police told a suspect that she would lose her welfare benefits and custody of her children if she did not confess. This brand of deception, unlike deception regarding a suspect's connection to a crime, was considered inherently coercive because it did

> more than affect the suspect's belief regarding her actual guilt or innocence, and judgments regarding the evidence connecting her to the crime. It also distorted the

suspect's rational choice ... by introducing a completely extrinsic consideration: an empty but plausible threat to take away something to which she and her children would otherwise be entitled. This extrinsic consideration not only impaired free choice, but also cast doubt upon the reliability of the resulting confession, for one can easily imagine that a concerned parent, even if actually innocent, would confess and risk prison to avoid losing custody of her children and their welfare benefits.

*Holland,* 963 F.2d at 1051–52 (internal citation omitted). The misrepresentation made here concerning the eyewitness to the murder did not rise to the level of coercion contemplated in *Lynumn.* The police conduct in this case was not of the type that would undermine the reliability of the confession, and it was not so coercive that it would overbear appellant's will and render his confession involuntary.

Appellant concedes that a misrepresentation by police is not alone sufficient to render a confession involuntary. However, he asserts that Novak's statement, coupled with appellant's age, education, and socio-economic background, amounted to a totality of circumstances that overbore his will during the interrogation and rendered his confession involuntary. We disagree. Indeed, the evidence supports the contrary. Appellant was eighteen at the time he made the confession. While he had a poor home life, this appears to have resulted in producing a "street so-phisticated youth." His juvenile records show that he is of average intelligence and that he completed the ninth grade. Prior to this crime, appellant had experience with the police in connection with various other criminal offenses. This prior experience with the criminal justice system weighs in favor of finding appellant's confession voluntary. *See United States v. Oglesby,* 764 F.2d 1273, 1278 (7th Cir.1985) (noting appellant with three prior convictions was not disadvantaged by law enforcement agent's promise). Yet another consideration supporting the voluntariness of appellant's confession is that he repeatedly received his *Miranda* warnings.

The circumstances surrounding appellant's confession were not so coercive to have over-

borne his free will. Points of error five through seven are overruled.

■ In his tenth point of error, appellant claims that the trial court erred in allowing the State to introduce evidence of extraneous offense conduct in violation of Tex.R.Crim. Evid. 404(b). During cross-examination of the State's ·witness Paul Lyman, defense counsel questioned Lyman about another individual, Patrick Haddix, and Haddix's involvement in the robbery of the murder victim:

Q: [Defense counsel] Wouldn't you agree with me [Haddix] was the lookout for this deal?

A: [Lyman] Yes, sir.

Q: He knew that [accomplice] Neal was going to rob somebody, didn't he?

A: He know [sic] a robbery was going to take place.

Q: At the end, you all split up the money, didn't you?

A: The money from what?

Q: The money from the robbery.

A: What robbery?

Q: Ask [sic] you this: Did you split up any money at the end of the night?

A: Yes, sir.

Q: And you took some, didn't you?

A: Yes, sir.

Q: And Patrick [Haddix] took some, didn't he?

A: Right.

Later, on re-direct examination of Lyman, the State asked to introduce evidence of several robberies committed by appellant and these same individuals on the night of the murder. The State claimed appellant's cross-examination of Lyman opened the door for questioning about the extraneous of-

fenses. Appellant objected, arguing that his questioning did not open the door to other offenses, but rather only referred to the robbery of the murder victim in an effort to show that Haddix and the other individuals received a portion of that stolen money. The court overruled appellant's objection and allowed testimony pertaining to five extraneous offenses committed in the hours before the murder.

On appeal, appellant contends that even if his questions to Lyman implicated the prior robberies, his questions concerned a conditionally relevant fact, i.e. that Haddix and the others were accomplices to the murder. The record shows that there was a pre-trial hearing on appellant's motion to determine accomplice testimony at which the trial court delayed its ruling until trial. When appellant re-urged the motion at trial, the court stated it would hear the witnesses's testimony before ruling on whether the witnesses were accomplices as a matter of law. Appellant argues that through the above testimony he intended to demonstrate that Haddix and some of the other witnesses were accomplices, and therefore, their testimony would have to be corroborated before it could be admitted. Appellant complains the trial court erred in allowing introduction of the extraneous offenses before he had an opportunity to prove that the witnesses were accomplices.

■ The fact that appellant's line of questioning was an attempt to demonstrate that certain witnesses were in fact accomplices to the robbery/murder does not negate the possibility that appellant might have opened the door for the admission of extraneous offense evidence. The appropriate inquiry, then, is whether appellant's questioning of Lyman opened the door to the extraneous offense evidence.[3] As an appellate court we

---

3. Tex.R.Crim. Evid. 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
> . . . .

Evidence of other crimes or bad acts that a defendant may have committed cannot be introduced at the guilt-innocence phase to show that the defendant acted in conformity with his criminal nature and therefore committed the crime for which he is on trial. *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). However, extraneous offenses may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or

review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). A reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Id.* at 391.

The trial court specifically identified appellant's question, "At the end, you all split up the money, didn't you?" as the question that opened the door for admission of the extraneous robberies. When the witness asked "[t]he money from what?" appellant identified the money as "[t]he money from the robbery." Although appellant knew that there were other robberies committed in close temporal proximity to the robbery of the murder victim, he failed to specifically limit his questions about "the robbery" to the robbery of the complainant. His questions about "the robbery" did not identify the complainant as the victim of the robbery. Lyman's answers to appellant's questions also did not indicate that the murder victim was robbed. For these reasons, we conclude it was not beyond the zone of reasonable disagreement for the trial court to find appellant opened the door to evidence of the extraneous robberies.

▪ Appellant further argues that the trial court erred in failing to state on the record why the evidence of the extraneous offenses was admissible under Rule 404(b). The trial court did not have to state why the evidence was admissible under Rule 404(b) because it was not basing its decision to admit the evidence at trial under that rule. The trial court allowed the evidence because appellant opened the door to its admission. *See Lockhart v. State*, 847 S.W.2d 568, 572 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). Additionally, appellant complains of the trial court's failure to conduct a Tex.R.Crim. Evid. 403 balancing test to determine if the probative value of the extraneous offense evidence was outweighed by the danger of unfair prejudice. Although he did not make a Rule 403 objection at trial, appellant argues that a separate objection to the admissibility of the

evidence on this ground was not required as long as he made a Rule 404(b) objection. In *Montgomery v. State*, this Court held that an objection under Rule 404(b) that "proffered evidence amounts to proof of an 'extraneous offense' will no longer suffice, by itself, to invoke a ruling from the trial court" as to whether the probative value of the evidence is outweighed by unfair prejudice. *Montgomery*, 810 S.W.2d at 388. Further objection based upon Rule 403 is required. *Id.* Point of error ten is overruled.

▪ In his eleventh point of error, appellant argues that this Court should remand this case to the trial court for an evidentiary hearing to determine whether the prosecution's decision to seek the death penalty against appellant was tainted by invidious racial discrimination. Appellant claims the evidence shows that in addition to appellant, three other accomplices were integrally involved in the capital murder of the African–American victim. Appellant, also an African–American, was charged with capital murder and two other accomplices, both African–Americans, plea bargained for prison sentences on aggravated robbery charges for their participation in the crime. The fourth accomplice, a Caucasian–American, was not charged with any crime in connection with the murder even though he was also implicated. Appellant asserts that this evidence, which he introduced prior to trial, establishes a prima facie showing of racial discrimination in the exercise of prosecutorial discretion. Appellant relies upon *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) for the proposition that if a capital defendant can establish a prima facie case that prosecutorial discretion in capital cases has been tainted with discrimination, a full evidentiary hearing should be conducted to determine the prosecutor's racial motivations, if any.

▪ The State correctly notes that appellant's argument is in essence an equal protection claim. *See McCleskey*, 481 U.S. at 291, 107 S.Ct. at 1766. The United States Supreme Court has stated that "[t]he decision

absence of mistake or accident." *Id.* Furthermore, where the defendant permits admission of

extraneous offense evidence, he waives error regarding such admission. *See id.* at 572 n. 7.

to prosecute may not be deliberately based upon unjustifiable standards such as race, religion, or other arbitrary classification,...." *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (*quoting Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)). In applying the above standard, this Court has recognized that an appellant who raises the issue of equal protection has the burden of proving what the Supreme Court has termed "the existence of purposeful discrimination." *County v. State*, 812 S.W.2d 303, 308 (Tex.Crim.App.1989). To succeed on such claim, an appellant must provide "exceptionally clear evidence" that the decision to prosecute was for an improper reason. *Id.* (*citing McCleskey*, 481 U.S. at 297, 107 S.Ct. at 1769–70).

Appellant has not satisfied his burden. He has not shown discriminatory intent on the part of the prosecutor. The record reflects that the decision of whom to prosecute was based on evidence of each individual's culpability as well as the State's ability to prove its case, rather than the individual's race. The proof against each individual varied indicating different degrees of involvement in the crime. Appellant's point of error eleven is overruled.

 In points of error twelve and thirteen, appellant argues that the trial court erred in allowing the State to introduce into evidence at the punishment phase a letter written by appellant, while he was in jail, to an accomplice to the murder. The letter reads as follows:

Shank, ..

STUMPA, ..

What's up damn fool? When I had talked to you in court I was trying to tell you how to get all our case dropped are at least dropped down. See what I was telling you was to tell Paul that I went to the club. They came over my house and beeped me. So I came home and rode back to the club with them. When we arrived I was talking to a girl in the parking lot of New Jack because I was to young to get in. But a man confronted me

with intentions to fight because I was talking to his girlfriend. So my friends broke it up and we drove off before it became something bad. So when we left I told them take me home but the told me to chill. So I rode with them we went got beer and cigarettes and we went out to eat at two paseo's. On our way back to my house going down fannin and main. The two paseo was located of westheimer by a movie place rental. So anyway we saw the niggas I got into it with when they saw us though they tried to run us off the road. I told Paul stopped the car I got out to go confront the nigga. And they drove around the block of the store location to pull up in the driveway. Because the curb is to high to just pull up without tearing your car up. So anyway when we came back around we seen the niggas I was gone squabble running to theyre car but you'll didn't see me. And that how they gone lift them cases off you'll (meaning Mike and Paul) back. They then told the laws that they committed four robberies with me that night. And the laws aint charged me with none and talking about probation. I never really cared to much about the niggas but Paul really alright nigga. And I want him to get out to. I dont know if he gone be down like we was. But if he do that cool with me. It will be me, you, and him now rolling. But tell him do that so them robberies be gone. Cause them laws gone try to hide him and he to young. So fuck it let all get another chance at the game. I dont care if a nigga with me or not 'I forever be a trigga happy nigga.'

If you talk to them niggas are them hoes tell them I say whats up.

/s/ STUMPA

(errors in original). The letter appears to reflect appellant's plan to avoid conviction by testifying that some other individuals wrongfully blamed him for the robberies they actually committed. At trial, appellant objected to admission of the letter on the grounds that it was highly prejudicial and had no probative value.[4] The trial court overruled appel-

4. Appellant also objected to the letter on the grounds that it was an unauthenticated docu-

lant's objection and the letter was offered as evidence of appellant's future dangerousness under Tex.Code Crim. Proc. Ann. art. 37.071. During closing argument, the prosecutor identified the letter as "the most important piece of evidence" demonstrating appellant's future dangerousness. She further stated that "[t]here is not a more compelling piece of evidence as a person is awaiting the trial of a capital murder that [sic] he tells you he will forever be trigger happy." The prosecution urged the jury to:

> [r]ead the letter. He wants to be back out there doing it again and he is the person who described himself as a trigger happy nigger. No one else described him that way. This is a letter written while he was waiting for you to decide his fate. That is how serious he is. That is what he thinks of the process and that is what he thinks of you.

Focusing in particular on the phrase "trigga happy nigga," appellant argues that the trial court should have excluded the letter because its racially inflammatory nature was "excessively prejudicial." He argues that young African–American males are frequently perceived as being the most violent segment of society and appellant's letter was reinforcing that negative stereotype.

An amicus brief filed on behalf of appellant argues that introduction of the letter permitted the prosecution to unjustifiably use appellant's race and youth to heighten racial prejudice, create fear, and reinforce stereotypes which characterize young African–American men as violent and prone to criminal behavior. This strategy, amicus claim, invited the jury to base their verdict on racially prejudicial grounds. The amicus identify the phrase "I forever be a trigga happy nigga" as lyrics from a popular "gangsta" rap song by the musical group "Geto Boys" and explain that by placing the phrase in quotes in his letter, appellant did

not intend to express a personal statement of his criminal intentions.

■ An appellate court reviewing the trial court's decision as to whether the probative value of the evidence was outweighed by the danger of unfair prejudice may reverse only for an abuse of discretion; that is, only when the trial court's decision was outside the zone of reasonable disagreement. See *Richardson v. State,* 879 S.W.2d 874, 881 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). Under the facts of this case, we do not agree that the trial court abused its discretion in concluding the introduction of the letter was not unfairly prejudicial. Appellant's race and youth were not the focus of the State's argument. Instead, the State introduced the letter to show appellant's continuing threat to society as indicated by his description of himself as trigger happy, as well as his desire to dodge responsibility for the murder and to get back in "the game." The evidence was probative of appellant's future dangerousness and the trial court did not abuse its discretion by allowing its admission.[5]

■ Appellant also claims the trial court erred in failing to articulate a Rule 403 analysis following his objection to the introduction of the letter on that ground. When ruling on the admissibility of evidence, the trial court implicitly makes findings of fact and conclusions of law. *McFarland v. State,* 845 S.W.2d 824, 842 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Appellant did not ask the court to make oral or written findings and the court is not mandated to *sua sponte* put these findings or conclusions on the record. *Id.*; *Theus v. State,* 845 S.W.2d 874, 880 n. 6 (Tex.Crim.App.1992). Points of error twelve and thirteen are overruled. .

---

ment under Tex.R.Crim. Evid. 902. However, appellant does not dispute the authenticity of the letter on appeal.

**5.** Appellant further claims that the letter was merely "street talk" and did not advocate violence, but instead was a constitutionally protected expression under the First Amendment. Citing *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct.

1093, 117 L.Ed.2d 309 (1992), appellant claims that since his letter was a constitutionally protected expression, the State had the burden to establish a close nexus between the letter and a legitimate penological factor. The State did this by demonstrating that the letter related to appellant's future dangerousness.

In point of error fifteen, appellant argues that the trial court erred in denying his challenge for cause against venireperson Stepanek. Appellant's challenge was based on Stepanek's refusal to consider youth as a factor mitigating against imposition of the death penalty.

To preserve error for a trial court's denial of a valid challenge for cause, it must be demonstrated on the record that appellant asserted a clear and specific challenge for cause, that he used a peremptory challenge on that juror, that all his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *Harris v. State,* 790 S.W.2d 568, 581 (Tex. Crim.App.1989). In a capital murder case, each side is entitled to fifteen peremptory strikes. Tex.Code Crim. Proc. Ann. art. 35.15(a). In the instant case, appellant used only fourteen of his peremptory strikes. Not surprisingly, he did not request additional strikes or complain about any objectionable jurors seated on the case. Appellant has failed to preserve error on this issue.[6] *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). Appellant's point of error fifteen is overruled.

In points of error seventeen through twenty-one, appellant argues that his rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 13, and 19 of the Texas Constitution were violated by the trial court's denial of his request to instruct the jury at the punishment stage of the trial that a defendant sentenced to life imprisonment for capital murder must serve 35 years before he becomes eligible for parole. Appellant also contends the court erred in denying him the opportunity to inform and examine prospective jurors about the parole law during voir dire.

At the punishment stage of trial, appellant requested that the trial court include in the charge to the jury an explanation that if a person is sentenced to life imprisonment for capital murder, he must serve 35 years before he is eligible for parole. The trial court denied this request. Instead, the court instructed the jurors as follows:

> During your deliberations, you are not to consider or discuss any possible action of the Board of Pardons and Paroles division or how long the defendant would be required to serve to satisfy a sentence of life imprisonment.

Appellant argues that the court's refusal to allow him to inform the jury about the parole law violates the cruel and unusual punishment provision of the federal and state constitutions, as well as due process.

This Court has consistently held that it does not violate the United States Constitution or the Texas Constitution to refuse to instruct the jury in a capital murder case concerning Texas' parole laws. *Moody v. State,* No. 71,687 (Tex.Crim.App. Jan. 17, 1996); *Smith v. State,* 898 S.W.2d 838, 846 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Hughes v. State,* 897 S.W.2d 285, 301 (Tex.Crim.App.1994); *Elliott v. State,* 858 S.W.2d 478, 489–90 & n. 7 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 563, 126 L.Ed.2d 463 (1993); *Stoker v. State,* 788 S.W.2d 1, 16 (Tex.Crim. App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). The matter of parole is not a proper consideration for jury deliberation during the punishment

---

6. Even if appellant had preserved error, his point would still fail on the merits. The constitution requires that a juror must be provided with a vehicle by which to give his or her reasoned moral response to relevant mitigating evidence. *Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Penry v. Lynaugh,* 492 U.S. 302, 328, 109 S.Ct. 2934, 2951–52, 106 L.Ed.2d 256 (1989). Each juror may or may not believe certain evidence is mitigating; however, the constitution only requires that where a juror believes there is relevant mitigating evidence, that juror must have a vehicle to give his or her reasoned moral response to such evidence. *Robertson v. State,* 871 S.W.2d 701, 712 (Tex.Crim. App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). Texas caselaw dictates that a juror is not required to consider youth as a mitigating factor. *Id.* at 712 n. 13 (*citing Cuevas v. State,* 742 S.W.2d 331, 345–46 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988)). A juror may consider youth to be either mitigating, or, in some instances, aggravating. *Id.*

stage of a capital murder trial. *Garcia v. State*, 887 S.W.2d 846, 860 (Tex.Crim.App. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); *Jones v. State*, 843 S.W.2d 487, 495 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). As such, a trial court is permitted to instruct jurors in a capital murder case *not* to consider Texas' parole laws. *See Ramirez v. State*, 815 S.W.2d 636, 653 (Tex.Crim.App.1991). This Court has held that giving such an instruction is not reversible error. *Id.* Therefore, the trial court's instruction in this case was proper.

■■■■■ Appellant additionally claims that his inability to voir dire jurors on Texas parole law violated his rights under Texas Constitution Article I, §§ 10, 13, and 19 to use his peremptory and for-cause challenges intelligently.[7] An abuse of discretion standard of review is applied in cases in which a defendant claims he was improperly restricted on voir dire. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App.1991). "The propriety of the question which the defendant sought to ask is determinative of the issue." *Id.* A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* As discussed above, the jury in the instant case was instructed that it was not to consider the issue of parole. Because parole was not an issue applicable to the case, the court did not abuse its discretion in refusing to allow voir dire questioning on that issue. *See McFarland v. State*, 928 S.W.2d 482, 504–05 (Tex.Crim.App.1996). Points of error seventeen through twenty-one are overruled.

■■■■ In point of error twenty-two, appellant argues that the evidence is insufficient to support the jury's negative answer to the third, or *Penry*, special issue.[8] The trial court must instruct the jury that if it returns an affirmative finding to each issue submitted under 37.071, § 2(b), the jury must answer the following:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Tex.Code Crim. Proc. Ann. art. 37.071, § 2(e). Appellant contends that he "offered a voluminous amount of compelling mitigating evidence which strongly reduced" his moral culpability for the crime.[9] However, this Court has stated that it will not review the jury's finding under § 2(e) for sufficiency of the evidence because the determination as to whether mitigating evidence calls for a life sentence is a value judgment left to the discretion of the factfinder. *See Colella v. State*, 915 S.W.2d 834, 845 (Tex.Crim.App. 1995); *Hughes v. State*, 897 S.W.2d 285, 294 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *see also Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). We have held:

> In Texas, this mitigating evidence is admissible at the punishment phase of a capital murder trial. Once admitted, the jury may then give it weight, if in their individual minds it is appropriate, when answer-

---

7. Appellant also complains that the trial court's refusal to allow him to voir dire prospective jurors on Texas parole law violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Because he fails to offer any argument or authority on this point, we refuse to address this claim.

8. Appellant incorrectly characterizes the jury's response to the *Penry* issue in this case as an affirmative answer. In fact, the jury answered the issue in the negative, thereby finding the mitigating circumstances insufficient to warrant a sentence of life imprisonment rather that a sentence of death.

9. Appellant's mitigating evidence included: (1) appellant's mother "kicked him out" of the house when he was fifteen years old; (2) throughout appellant's childhood he lacked an adult figure to offer love and guidance and he had been treated with utter indifference by his parents; (3) appellant's mother was mentally ill and suffered from "serious psychiatric problems" (4) appellant was physically, verbally, emotionally, and sexually abused; (5) appellant started using drugs at age fifteen (6) appellant did "extremely well" and did not show any trace of hostility when he was under intense supervision.

ing the questions which determine sentence. However, "[t]he amount of weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion exercised by each juror.'" *Banda v. State,* 890 S.W.2d 42, 54 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995).

■ "Mitigating evidence" is defined as "evidence that a juror *might* regard as reducing the defendant's moral blameworthiness." Tex.Code Crim. Proc. Ann. art. 37.071, § 2(f)(4) (emphasis added). Each juror individually determines what evidence, if any, mitigates against the just imposition of the death sentence. *Banda,* 890 S.W.2d at 54; *see Cuevas v. State,* 742 S.W.2d 331, 346 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988). "Because the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror, we decline to review the evidence for sufficiency." *Colella,* 915 S.W.2d at 845. Point of error twenty-two is overruled.

In point of error twenty-three, appellant argues that a trial court's statutory instructions on the third special issue makes impossible meaningful appellate review of the sufficiency of the evidence supporting the issue and, therefore, renders Texas' capital sentencing scheme unconstitutional under the Eighth and Fourteenth Amendments of the United States Constitution. He complains that the mitigation special issue is open-ended and unstructured because it does not specify the types of mitigating factors relevant to the jury's deliberations during the punishment phase. Thus, appellant claims, an appellate court has no means by which to determine whether the jury considered all of the constitutionally relevant mitigating evidence, which in turn makes meaningful appellate review of the jury's decision impossible.

■ Appellant's point of error is without merit. The United States Supreme Court has held that a sufficiency review of mitigating evidence is not required under the Eighth and Fourteenth Amendments to the United States Constitution. *Hughes,* 897 S.W.2d at 294; *cf. Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); Point of error twenty-three is overruled.

■ In point of error twenty-five, appellant argues that the trial court's "extra-statutory" charge on the burden of proof regarding the mitigation special issue "created the potential for confusing a rational jury." The record reflects that in the abstract portion of the jury charge, the court instructed the jury that

> It is not required that the prosecution prove *these issues* beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant.

(emphasis added). Appellant claims that a jury applying the court's instructions would believe that a death sentence was appropriate unless the State proved "beyond a reasonable doubt" that a life sentence was appropriate in view of Appellant's mitigating circumstances.

The jury in the instant case was instructed to consider three special issues. The first two concerned whether appellant would be a continuing threat to society and whether appellant killed, intended to kill, or anticipated that a life would be taken during the commission of the crime. The third special issue allowed the jury to assess a life sentence if it found that there were sufficient mitigating circumstances to do so. Article 37.071, § 2(c) mandates that the State is required to prove the first two issues beyond a reasonable doubt. There is no burden of proof on the mitigation special issue.

The court's instructions on the first two special issues informed the jury that

> The burden of proof in Special Issue No. 1 [Special Issue No. 2] rests upon the State and it must prove the affirmative of such issue beyond a reasonable doubt.

In the application section of the first special issue the jury was asked

> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, ... would commit

criminal acts of violence that would constitute a continuing threat to society?

The answer signed by the foreman stated

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "Yes."

The question and answer on the second special issue contained the same reasonable doubt language. The question and answer on the mitigation special issue, however, did not assign a burden of proof.

Despite these instructions, appellant claims that the instruction in the abstract portion of the charge confused the jury. We disagree. The instruction was included in the portion of the charge defining "reasonable doubt" and it did not assign a burden of proof to any of the special issues, rather, it clarified the quantum of evidence necessary to meet the State's burden of proof. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991) (adopting instruction on "reasonable doubt").

■ Furthermore, appellant admits that he failed to object to the inclusion of the "extra-statutory" instruction in the charge. As such, the error must be fundamental and we will reverse only if the error is so egregious and created such harm that appellant did not have a fair trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opin. on reh'g). The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* In view

of the fact that a burden of proof was never assigned to the mitigation special issue, and that the trial court correctly instructed the jury as to the first two special issues, we cannot conclude that appellant was deprived of a fair trial. Point of error twenty-five is overruled.

■ In point of error twenty-six, appellant argues that Article 37.071, § 2(e) is facially unconstitutional because it does not assign a burden of proof on aggravating circumstances, but implies that the defense has the burden to disprove the existence of aggravating circumstances. Article 37.071, § 2(e) does not ask the jury to consider aggravating evidence. Appellant's point of error twenty-six is overruled.

Appellant's points of error fourteen, sixteen, and twenty-seven through thirty-five have previously been addressed and rejected by this Court. *See Lawton v. State*, 913 S.W.2d 542 (Tex.Cr.App.1995).[10] Accordingly, those points of error are overruled.

The judgment of the trial court is affirmed.

CLINTON, J., concurs.

BAIRD, J., concurs with the following note:

I disagree with the majority's treatment of appellant's twenty-second and twenty-third points of error for the reasons stated in *Morris v. State*, —— S.W.2d ——, 1996 WL 514833 (Tex.Cr.App. No.71,799, delivered

---

10. Those points of error include:

challenge to Article 37.071, § 2(b)(2) on the grounds that it allows the jury to sentence a defendant to death for merely anticipating that a human life might be taken; challenge to the definition of "mitigating evidence" in Article 37.071, § 2(f)(4) as "unconstitutionally narrow"; challenge to the death penalty as cruel and unusual punishment in violation of the United States and Texas Constitutions; challenge to the jury instructions given pursuant to Article 37.071, § 2(d) and 37.071, § 2(f); challenge to the proscription under Article 37.071, § 2(g) against informing jury of the effects of a hung jury; challenge to Texas' capital punishment scheme as violative of Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 13 and 19 of the Texas Constitu-

tion alleging death penalty is arbitrarily imposed; challenge to mitigation special issue as rendering Texas' capital punishment scheme unconstitutional under United States Supreme Court decision in *Furman v. Georgia;* challenge to admission of unadjudicated extraneous offenses during punishment as violative of Article 37.07, § 3(c) and due process guarantees of the federal constitution.

In point of error thirty-two, appellant additionally claims that the Texas death penalty scheme violates Article I, § 19 of the Texas Constitution. However, he fails to make this argument under that provision.

In point of error thirty-four, appellant mistakenly refers to Article 37.07, § 3(a) instead of Article 37.07, § 3(c).

September 11, 1996) (Baird, J., dissenting). Accordingly, I join only the judgment of the Court.

OVERSTREET, J., dissents