NO. 07-06-0336-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 14, 2007
_____

JAMES E. FRY,

                        Appellant

v.

THE STATE OF TEXAS,

                        Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409207; HON. BRADLEY S. UNDERWOOD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

      James E. Fry appeals his conviction for aggravated sexual assault through one issue. In it, he contends that the trial court erred in failing to instruct the jury about whether his statement to the police was voluntarily made. We overrule the issue and affirm the judgment.

*Background*

The case involves appellant's licking of his granddaughter's genitals. Once an investigation into the allegation began, appellant agreed to undergo a polygraph test and met with an investigator for that purpose. In preparation for the test, the investigator allegedly told appellant that he needed to compile questions to ask and solicited appellant's help. Appellant agreed. Thus, the allegations made by the victim were read to appellant, and he was asked to respond to them in writing. Prior thereto, he was mirandized. Indeed, appearing on his written statement are appellant's initials beside the written *Miranda* admonitions acknowledging that he was provided them.

In responding to the allegations, appellant wrote, among other things, that he had "licked" the child's "vagina one time" while playing "puppy".[1] So too did he state that the child touched his penis twice, once while he was exiting the shower and on another occasion. At trial, appellant endeavored to explain what he meant by and why he made the statements. For instance, use of the word "vagina" purportedly was not his idea. Instead, appellant wanted to say that he licked her "private area," but the officer told him to call it the "vagina" because that is what the child called it. The incident was accidental, according to appellant, and he apologized to the child for it. As for the instances when the girl touched his penis, they allegedly were accidental as well and occurred when she unexpectedly walked into the bathroom while he was in it and came in contact with the appendage.

---

[1] Playing "puppy" consisted of the two making believe that they were puppies chasing and licking each other.

2

Appellant also reiterated that while he wrote the statement, he was not intending to confess but merely trying to clarify what occurred and assist the investigator in developing polygraph questions. Yet, nowhere did he claim that he was physically forced to provide the statement or that the contents of the statement (save for reference to "vagina") were false, that he did not know the statement would be used against him, that he did not intend to make the disclosures, that if he had known that the statement was to be used against him he would not have made it, or that his responses would have differed had he actually taken the polygraph.[2] Again, he acknowledged that he was simply responding to the officer's questions in effort to clarify what he believed to be the truth regarding the child's allegations.

*Discussion*

When evidence at trial raises an issue regarding the voluntariness of the accused's confession or written statement, the trial court must instruct the jury that it shall be disregarded unless it concludes, beyond a reasonable doubt, that the utterance was voluntarily made. TEX. CODE CRIM. PROC. ANN. art. 38.22 §§6&7 (Vernon 2005); *see also Mendoza v. State,* 88 S.W.3d 236, 239 (Tex. Crim. App. 2002) (stating that when the evidence presented at trial raises a factual issue as to whether a defendant had been warned of his rights and had voluntarily waived them, he is entitled to an instruction on the voluntariness of the statement). Next, a confession is involuntary if the totality of the circumstances demonstrate that the speaker's decision to speak was not made of his own free will. *Green v. State,* 934 S.W.2d 92, 99-100 (Tex. Crim. App. 1996). That the

---

[2]The investigator decided that the polygraph was no longer needed given the tenor of appellant's written replies.

3

decision was induced through a misrepresentation by the interrogator is a factor to consider in the mix but not alone determinable. *Id.* Again, all depends on the totality of the circumstances, and the focus lies on whether the police misconduct "was such as to overbear the will of the accused and bring about a confession not freely determined." *Id.*

The totality of the circumstances reveals no evidence suggesting that appellant's statement was involuntary, as that term is defined above. Nothing indicates that he had any qualms in speaking to the investigator about the incident. Indeed, he initially met with the investigator to undergo a polygraph wherein questions would be propounded involving the truthfulness of the child's accusations and his role, if any, in the assault. In other words, he came to talk, and no one suggests that his decision to talk via a polygraph was coerced in any way. Nor does anyone 1) deny that he was mirandized before talking or 2) suggest that the investigator purported to extend to him some type of immunity when talking before the polygraph was administered. So, that he may have thought his answers were to be used in drafting questions for the polygraph is of no import; to so believe and yet agree to answer is nothing short of recognizing that the statement was going to be used to affect the prosecution in one way or the other. Moreover, that the officer may have told him of certain words to utilize in the non-custodial exchange is also inconsequential for the Court of Criminal Appeals held in *State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999) that such is not the stuff from which an involuntary statement arises. *Id.* at 726.

Simply put, what we have here is a situation wherein the investigator and appellant may have had in mind different purposes to which his statement would be put. Yet, each purpose entailed the investigation of the child's claim and use of the comments as a means

4

of assessing appellant's guilt or innocence. He may not have wanted to confess but that is a distinction without a difference. After all, he undoubtedly knew that what he was going to say would be used (at least during the administration of a polygraph) to determine his culpability, and he talked nonetheless. And, without any evidence showing that he was granted some type of license to speak without fear of prosecution or that his answers would have differed had he undergone a polygraph or that he initially appeared against his will, the trial court was well within its discretion to conclude that his written statement and its contents were made under appellant's own free will. So, he was not entitled to the instruction at issue.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.