# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00712-CR
NO. 03-11-00713-CR
NO. 03-11-00714-CR

**Joe Chavez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
NOS. 14,071, 14,072 & 14,073
HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Joe Chavez was indicted for four offenses related to his sexual relationship with a sixteen-year-old girl. Before trial, he pleaded guilty to online solicitation of a minor, one count of sexual assault of a child, and one count of official oppression. The jury found him not guilty of the remaining count of sexual assault of a child, but assessed the maximum punishments authorized for the offenses to which he pleaded guilty: ten years in prison and a $10,000 fine for solicitation, twenty years in prison and a $10,000 fine for sexual assault, and one year in jail and a $4,000 fine for oppression. The court set the sentences to run concurrently. On appeal, Chavez contends that the trial court erred by allowing the State to ask him whether he offered to pay for an abortion for another teenager with whom he had sex. He contends this evidence was highly inflammatory

and that the State failed to give proper notice of its intention to ask these questions. We will affirm the judgment.

## BACKGROUND

Chavez was a law enforcement agent at the Texas Alcoholic Beverage Commission. He recruited minors who would try to purchase alcoholic beverages as part of a sting operation. One was "Bailey Walker,"[1] the sixteen-year-old daughter of a law enforcement office employee. Chavez and Walker exchanged telephone calls and texts that were professional at first, but became increasingly personal. They eventually discussed the possibility of having sex with each other and included increasingly revealing photos, including one of Chavez's genitals. After the sting operation, Chavez drove Walker to a back road where they had sex, then he dropped her off at home, telling her to keep their encounter a secret.

Because of Chavez's guilty pleas, the only contested guilt-innocence issue was whether Chavez penetrated Walker's sexual organ with his fingers. The jury found that he did not.

At the punishment phase, the State introduced evidence from several women regarding their sexual interactions with Chavez. Three were women he came into contact with in his work—a coworker, a bartender, and a liquor-store owner. All three testified that Chavez made sexual comments and advances toward them, and the store owner testified that she had sex with Chavez. Two witnesses were recent participants in TABC stings while they were high-school students and told about the suggestive comments that Chavez made repeatedly to them. Others knew

---

[1] Bailey Walker is a pseudonym used for the child in court documents beginning with the indictments.

Chavez from their high-school days in the mid-1990s when he worked as a police officer in Cuero, Texas during his late twenties. Three of the women claimed he had sex with them, one of whom was younger than seventeen at the time. One of the women, C.B., became pregnant and thought that Chavez might be the father. Paternity testing showed he was not.

There was also evidence of a car accident that ended Chavez's job with the Cuero police department. At a charity softball game, Chavez consumed alcoholic beverages—one witness testified that he was intoxicated—and his car collided with a parked van. The State's witness testified that she saw Chavez get out of the driver's side of the car, announce that he was a police officer, minimize the damage, act "very cocky, belligerent" toward the other driver, and fail to call the incident in to an on-duty officer. Chavez testified that he did not believe he was intoxicated, that a crowd gathered and became ugly, and that he did call an on-duty officer.

The defense presented witnesses who testified regarding Chavez's good character at work and during his service with the naval reserve (including helping a former colleague in need after returning from deployment). His priest testified regarding his conduct after his arrest. His current wife testified regarding their marriage.

Chavez testified. He talked about the importance and strength of his family, his nine children—two from his second marriage, two from his third marriage, his third wife's child from a previous marriage, and four children he and his third wife adopted so that the children could stay together. He testified that his infidelity caused him to feel guilt, shame, and embarrassment, that he realized it was his fault, and that he accepted responsibility for his actions. He also rebutted the testimony of the women from Cuero. He denied having sex with two of the women, denied having

3

any sort of relationship with a third, and admitted having sex with the fourth woman. The State's cross-examination of him relating to his testimony about the fourth woman forms the basis of his appeal.

**DISCUSSION**

Chavez asserts that the trial court erred by admitting "highly inflammatory punishment testimony" in violation of the rules of evidence and a statute. *See* Tex. R. Evid. 401 & 403; *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2012). He also asserts that the court erred by failing to require statutorily mandated notice of intent to offer the evidence. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2012). We review the admission of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

We will address the notice issue first. The statute requires that, "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g). The rule of evidence permits certain uses of evidence of other crimes, wrongs, or acts so long as "reasonable notice is given in advance of trial of intent to introduce *in the State's case-in-chief* such evidence other than that arising in the same transaction." Tex. R. Evid. 404(b) (emphasis added). The court of criminal appeals applied this straightforward reading of the plain language of the statute and rule in opining that evidence of other offenses or bad acts can be introduced in rebuttal to mitigation evidence without notice on cross-examination. *Jaubert v. State*, 74 S.W.3d

1, 3-4 (Tex. Crim. App. 2002) (holding defense counsel was not ineffective for failing to request notice of extraneous offense evidence admitted at trial because such evidence was introduced on cross-examination and, therefore, notice requirement did not apply). The challenged evidence was adduced on cross-examination in rebuttal to mitigation evidence and, therefore, was not subject to the notice requirement. The trial court did not abuse its discretion by admitting the challenged evidence without notice.

Chavez contends that evidence was admitted in violation of rules of evidence and statutory law. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable.[2] Tex. R. Evid. 401. Relevance at the punishment stage of non-capital trials is somewhat less well-defined because there is generally no particular fact that must be found. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). Defining relevance at punishment "cannot be determined by a deductive process but rather is a function of policy." *Id.* The court of criminal appeals wrote further:

> The policies that operate during the punishment phase of a non-capital trial include (1) giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant; (2) the rule of optional completeness; and (3) whether

---

[2] The State argues that Chavez waived a challenge that the evidence should have been excluded as irrelevant. While Chavez discusses relevance compared to unfair prejudice in the context of his Rule 403 challenge, it is not clear that he contends that the trial court erred by not excluding the evidence for its sheer irrelevance. It is clear, however, that he did not object at trial on relevance grounds to the line of questions posed to him. He objected that the line of questions the State posed to him would be inflammatory, improper impeachment, and substantially more prejudicial than probative, but not that the evidence would be irrelevant. For the sake of thoroughness, we conclude that, to the extent that Chavez raises a challenge to the admission of the evidence on pure relevance grounds under either Texas Rule of Evidence 401 or Texas Code of Criminal Procedure article 37.07, section 3(a)(1), that challenge was not preserved, is waived, and is overruled. *See* Tex. R. App. P. 33.1.

5

the appellant admits the truth during the sentencing phase. As a result, we have explained that relevance during the punishment phase of a non-capital trial is determined by what is helpful to the jury.

*Id.* (footnotes and citations omitted). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. The legislature has described the type of evidence permissible at the punishment hearing:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

The following includes the challenged exchange between the prosecutor and Chavez:

Q. Mr. Chavez, you had sex with [C.B.]?

A. That's correct.

Q. And you heard the testimony that she testified that she became pregnant—

A. Right.

Q. —around the time that you had sex with her.

6

A. That's what I heard, yes.

Q. Did you have a conversation with her about that pregnancy?

A. I never did, ma'am.

Q. She never talked to you about you possibly being the father?

A. No, ma'am.

Q. And, in fact, that conversation—she had a conversation with you and in that conversation she told you, you might be the father, and you told her she should get an abortion.

A. No ma'am. I never had a conversation with her. I had it through another party.

Q. Through that other party you offered to pay for an abortion?

A. No, ma'am.

Q. So [C.B.] was lying when she said she talked to you about the paternity of the child?

A. Was she lying—I'm sorry, I got distracted.

Q. Was she lying when she told this jury that she had a conversation with you about you possibly being the child—

A. I never had a conversation with her personally about her being pregnant. Like I said, I heard it through a second party.

Q. Did you talk to her directly or through a third party about the fact that you were—

A. Not direct and not through a second party. I heard it through a second party that rumors were going around that she was pregnant.

Q. Okay. So I guess my question is, I'm not talking about rumors. Did you have communications with her, [C.B.], about the fact that you might be the father of her child?

A. No, not directly.

Q. So you're telling this jury she lied about that?

A. I'm telling you, no, I didn't.

Chavez argues that the abortion-related testimony was not relevant as impeachment because C.B. had not been allowed to testify on that topic and nobody else had raised it before the jury. Chavez also argues that this topic did not provide the jury any information needed to tailor an appropriate sentence for him—particularly since Chavez denied any post-pregnancy conversation with C.B. occurred, much less one on this topic. He contends that this lack of relevance is substantially outweighed by the danger of creating unfair prejudice in the minds of jurors who oppose abortion.

We conclude that the record does not establish the requisite level of danger of unfair prejudice. The challenged evidence is Chavez's denial that he offered to pay for an abortion for someone in another town in the mid-1990s. In order for unfair prejudice to arise, a juror would have to (1) disbelieve Chavez's claim that he did not speak with C.B., (2) disbelieve his assertion that he did not offer to pay for an abortion, and (3) believe that Chavez offering to pay for an abortion was wrong. In order to reverse the punishment on Rule 403 grounds, we would have to conclude further (1) that this hypothetical juror's determination and conviction constituted an unfair prejudice, would confuse the issues, or mislead the jury, (2) that the danger of this hypothetical juror's decision-tree coming to such negative fruition for Chavez substantially outweighs any probative value of the evidence, and (3) that the trial court's failure to reach this conclusion about the evidence was outside the zone of reasonable disagreement. The record does not adequately support that entire sequence of decisions. Based on the record, the trial court could have found the evidence to be helpful in creating a fuller picture of Chavez for the jurors, much like the evidence of Chavez's good works

8

and family ties.  The trial court reasonably could have theorized that the jurors could deviate from the decision tree at any branch short of reaching a prejudice that was unfair to Chavez, that the evidence was not confusing or misleading, or that—whatever the juror believed—the danger of the perils listed in Rule 403 did not substantially outweigh the relevance of the evidence.  We find no abuse of discretion in the admission of the challenged evidence.

Finding no reversible error presented, we affirm the judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:  August 24, 2012

Do Not Publish