Opinion issued July 17, 2003





 








In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00822-CR






JAMES CLAY FOX, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 895641






MEMORANDUM OPINION


 A jury found appellant, James Clay Fox, Jr., guilty of aggravated sexual assault
of a child and assessed his punishment at 20 years' imprisonment. In six points of
error, appellant contends that the evidence was legally and factually insufficient to
sustain his conviction, the trial court erred when it admitted hearsay testimony, he
was denied effective assistance of counsel because his trial counsel failed to object
to improper victim-impact testimony and because of the cumulative effect of his trial
counsel's errors, and the trial court erred when it admitted evidence of extraneous
offenses to impeach the testimony of appellant in the punishment stage. We affirm.

Background

 Appellant is an acquaintance of Melissa Rundle, who is the mother of
complainant, a nine-year old girl. Appellant was also a friend of Rundle's brother,
who died. 

 At trial, Rundle testified that, shorrtly after her brother's death, she and
appellant became friends. Rundle received a call from appellant at approximately
3:00 p.m. one Friday afternoon. Rundle worked at Continental Airlines and lived
near the airport, and appellant, who lived out of town, was on a layover in Houston. 
Rundle invited appellant to spend his layover at her home that evening, intending to
return him to the airport later that evening for his flight. After picking appellant up
at the airport, Rundle and appellant went to her home. On the way from the airport
to the Rundle home, appellant asked Rundle to change his flight so that he could fly
out the next morning. Rundle agreed to change appellant's flight to the next day and
agreed that appellant could stay at her home for the night.

 At the Rundle home, appellant placed his belongings in the guest room. While
appellant was in the guestroom, Rundle asked the complainant to go to her bedroom
to pull her hair back. The complainant later told Rundle that appellant had
commented to her, while she was pulling her hair back, that he "liked it that way." 
Although she was "bothered" when the complainant related appellant's comment,
Rundle did not mention it to appellant at the time.

 Appellant, Rundle, and the complainant went to a liquor store to purchase
liquor for a party that Rundle had planned for that evening. At the party that evening,
Rundle, her husband, and appellant consumed alcohol. When Rundle woke up the
next morning, the complainant, not her husband, was in bed with her. Rundle went
into the complainant's room and found her husband sleeping. Rundle asked her
husband why he and the complainant had changed places during the night. Rundle's 
husband replied that the complainant had awakened him during the night and told him
that she was scared. He told the complainant to sleep with Rundle and he went to
sleep in her bed. Rundle stated that, while it was not unheard of for the complainant
to want to sleep with her parents, it was not the child's normal behavior. Rundle took
appellant to the airport at 6:00 a.m. and she then worked at the airport until 12:00
p.m.

 While Rundle was at work that Saturday morning, she spoke with the
complainant on the phone about why the complainant had been sleeping in Rundle's
bed instead of her own. Rundle stated that the complainant's answer, that she had
been scared, bothered her because the complainant had stated earlier that she hadn't
had a nightmare that night. When Rundle returned home from work later that
afternoon, she spoke to the complainant again about the previous evening. 

 At this point in Rundle's testimony, appellant objected that Rundle's and the
complainant's conversation about the events of the previous evening was hearsay and
was inadmissible because the State did not notify appellant of its intention to
introduce the complainant's outcry statements. After conferring with Rundle for a
moment, the State instead asked: 

 [State:] Mrs. Rundle, based on your conversation with [the
complainant] that afternoon, did you have reason to suspect
that [appellant] . . . had abused your daughter?


 [Rundle:] Yes, I did. 

Appellant objected that the State's question introduced "backdoor hearsay." The trial
court overruled appellant's objection. Shortly after this exchange, the State again
questioned Rundle about the complainant's statement:

 [State:] Through the course of your discussion, did you determine
where this event had taken place?


 [Appellant:] Your Honor, again, I object. This is backdoor hearsay.


 [Rundle:] In her bedroom.


The trial court sustained appellant's objection and instructed Rundle to wait for a
ruling rather than answer a question that had been objected to. Rundle then testified
that she called the police after speaking with the complainant, and that a female
police officer came to interview Rundle and the complainant. 

 Rundle further testified that, since the assault, the complainant has had
nightmares and Rundle has found the complainant crying in her room. Rundle also
testified that the complainant had expressed a desire to redecorate her room, and that
she had expressed a fear of adult men.

 The complainant testified that, when she went to the liquor store with her
mother and appellant, appellant asked her whether she wanted a piggyback ride. The
complainant was wearing shorts and appellant reached up her shorts and put his
fingers into her vagina during the course of this piggyback ride in the store. The
complainant did not tell anyone about appellant touching her vagina. 

 Later that evening, after the party, the complainant took a shower and put on
her pajamas before going to bed. Appellant had, earlier that evening, asked her to
come to his bedroom. When the complainant got out of the shower, she combed her
hair in front of the mirror while she was wrapped in a towel. Appellant then came
into the bathroom and used the toilet in an adjoining bathroom. Appellant sat on the
toilet and, through the partially open door, asked the complainant whether she
intended to come into his room before she went to sleep. The complainant told him
she would. Moments later, while she was putting on her pajamas, appellant again
returned. The complainant had only a towel wrapped around her waist, and no shirt
on. The complaint testified that, despite her embarrassment, appellant hugged her and
then left the bathroom. 

 When the complainant went into appellant's bedroom to tell him goodnight, he
kissed her on the lips. The complainant then went to her room and fell asleep. She
woke up to find her pajama bottoms had been pulled down and appellant was putting
his fingers into her vagina. The street lights, shining through the window, provided
enough light so that she could see appellant's face. Appellant asked her whether she
wanted him to stop and she said yes. Appellant then said he was going to do
something to her that was going to "feel good" and put his mouth on her vagina. The
complainant testified that she was scared and did not do anything except cry. 
Appellant then asked her if she was all right, and stroked her hair. When appellant
left the room, the complainant went to the bathroom and then into her parents room. 

 Appellant was gone the next morning when the complainant woke up. When
Rundle got home from work, the complainant told Rundle that appellant had
assaulted her in her bedroom the previous evening. The complainant also told Rundle
about the piggyback ride the day before and that appellant had put his fingers into her
vagina. During her testimony, the complainant was unclear about whether she told
her mother about the piggyback ride the day after it happened or several days later. 
The complainant testified that she thought that, although Rundle knew appellant was
giving her a piggyback ride at the liquor store, Rundle did not know that appellant
was assaulting her at the same time. Appellant did not object to the complainant's
testimony regarding her conversation with her mother.

 Harris County Sheriff's Deputy Darlene Thomas testified that she was sent to
the Rundle house to investigate the report of sexual assault, and she spent 10 to 15
minutes at the home interviewing Rundle and the complainant. Thomas noted that
Rundle appeared shaken and upset when she opened the door, and Rundle's eyes
were red and watery, as if she had been crying. Thomas also noted that the
complainant appeared anxious, upset, and nervous. The complainant appeared
embarrassed when telling Thomas what appellant had done. Thomas instructed 
Rundle and the complainant to go to the Children's Assessment Center for a sexual
assault evaluation. Thomas did look into the complainant's bedroom and she stated
that she did not visually observe any semen stains on the bedclothes. In her
testimony, Thomas admitted that it might have been helpful to the investigation to
know whether any DNA evidence could have been collected from the bedclothes. 

 However, Thomas also stated that, based on the complainant's description of
events, Thomas believed more evidence could be collected from a physical
examination of the complainant at the Children's Assessment Center than from the
complainant's bedroom. Thomas testified that, while it was possible that saliva might
have been found on the complainant's bed, the bed was not tested because, from the
complainant's description of the assault, Thomas did not think that the complainant's
body had been lying directly on the bed when appellant assaulted her. 

 Harris County Sheriff's Detective Donald Wine testified that he investigated
the assault and that, as part of his investigation, he watched as the complainant was
interviewed at the Children's Assessment Center. Wine testified that the
complainant's statement, made in another room while he watched the interview on
a television monitor, was clear, concise and specific. Wine found the evidence in the
investigation to be consistent and, based on the evidence he collected from the
complainant's interview, he determined that charges should be filed against appellant. 
 Harris County Medical Examiner Lisa Gerides testified that the DNA testing 
was performed on evidence gathered during the sexual assault evaluation of the
complainant at the Children's Assessment Center. Swabs taken from the
complainant's vaginal area tested positive for amylase and blood, swabs taken of
secretions found on the complainant tested positive for amylase, and the
complainant's panties tested positive for amylase. Gerides explained that amylase is
a protein found in the human body and present, in different forms, in all bodily fluids
except blood. Gerides stated that, while the presence of the enzyme amylase on a
surface is presumed to indicate that saliva is present, she was not able to tell from a
positive amylase test whether the enzyme detected was in fact from saliva or whether
it came from some other bodily fluid. Gerides stated that the positive result could
have been caused by the complainant's own bodily secretions and, without further
testing, it was not possible to tell whether the amylase was from appellant's saliva. 

 Dr. Shannon Hayes, a physician at Texas Children's Hospital, testified that she
conducted an examination of the complainant and assembled a sexual assault kit
during that examination. The medical records made by Dr. Hayes and others at Texas
Children's Hospital were admitted into evidence. Appellant objected to the
admission of the records on the grounds that the reports contained hearsay and should
have been redacted before admission. The trial court overruled appellant's objection.

 Dr. Hayes conducted a visual examination of the complainant, looked for any
hairs on the complainant's pubic area, and collected swabs of fluid from the
complainant's skin and vaginal area. Dr. Hayes stated that, although the
complainant's exam was normal for the most part, she did observe that there was
some bruising in the complainant's vaginal area. Dr. Hayes stated that such bruising
was possibly consistent with an oral sexual assault. Dr. Hayes stated that the
complainant's hymen was intact, and that this finding probably meant that the
complainant's vagina had not been penetrated. Dr. Hayes admitted that she was
unable to tell how old the bruising was or what had caused it, but she stated that
blood found in a vaginal swab indicated that some trauma had occurred. 

 During the punishment stage, both Rundle and her husband testified about the
impact the assault had on the complainant and their family. Rundle testified that the
complainant had told her, "My life is ruined." Rundle also testifed that the
complainant was occasionally sad, but that for the most part, she had seemed resilient. 
Rundle herself had become less trusting of friends and family and wanted appellant
to "pay the price for what he did." At the punishment phase of trial, Rundle testified,
in part, as follows:

 [Rundle:] . . . And what I want for him to do is to pay the penalty. 
And I don't want him to hurt any other children. What has
been done has been done to [the complainant] and we will
deal with that, but it's going to stop here . . . .

 

 [State:] Do you think he should get probation for this?

 

 [Rundle:] No. Absolutely not.

 

 [State:] Do you think he should go to prison for this?

 

 [Rundle:] I absolutely believe he should go to prison. The penalty for
this is imprisonment. You chose to do this, you're not sick,
your behavior is sick, and you are going to pay for it.

Appellant raised no objection to Rundle's testimony. 

 Appellant also testified during the punishment stage. Appellant stated that he 
had never been convicted of a felony or placed on probation, he described his
education, and he stated that he served in the Marine Corps for six years. Appellant
also stated that he had been honorably discharged. 

 On cross-examination, the prosecutor asked appellant whether he had ever "had
any trouble" while serving in the Marines. Appellant's trial counsel objected, and,
in a bench conference, appellant's trial counsel informed the trial court that the basis
for the objection was that he believed the State was attempting to introduce an
extraneous offense of which appellant had not been notified. The prosecutor
explained to the trial court that she had military records indicating that appellant had
not been honorably discharged from the Marine Corps, and that she was responding
to appellant's testimony that he had been. The trial court overruled appellant's
objection. 

 Appellant then testified that, although he had been on unauthorized leave while
stationed in the Philippines, he had in fact been honorably discharged. The
prosecution then handed appellant some military records to refresh his memory. (1) The
State contended that the military records indicated that appellant had a problem with
alcohol, had been charged with possession of narcotics, had been listed as a deserter
and that he had "request[ed] separation with other than honorable conditions." 
Appellant denied each of the assertions, testifying that the supposed narcotics were
in fact tea leaves and malaria pills, that he had never been charged with possession
of narcotics, that he had never been charged with being a deserter while in the
Marines, and, although military records indicated that he had been arrested by
military police, he had actually turned himself in at his base at the end of his
unauthorized leave. 

Legal and Factual Sufficiency

 In his first and second points of error, appellant challenges the legal and factual
sufficiency of the evidence supporting his conviction. In evaluating legal and factual
sufficiency, we follow the usual standards of review. See Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000) (legal); King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000) (factual).

 Appellant argues that the evidence presented was insufficient to support his
conviction because the police investigation and forensic testing performed did not
conclusively establish that the complainant had been assaulted, nor was it established
that he was the person who had assaulted her. Appellant points to the amylase
testing, which could not conclusively ascertain whether the amylase detected was
from saliva, and to the lack of DNA testing performed as failures by the State to
present sufficient evidence to support his conviction. 

 Appellant also argues that conflicts in the testimony of Rundle and the
complainant made their testimony "unreliable" and insufficient to support his
conviction. Appellant points to Rundle's testimony that, although appellant's
comment to the complainant about her hair bothered Rundle, she did not mention it
to the police the next day. Nor, as appellant points out, did Rundle mention the
piggyback ride that the complainant testified her mother witnessed. Appellant also
highlights what he refers to as other "inconsistencies" in Rundle's testimony,
including whether it was normal for the complainant to want to sleep with her parents. 
 Additionally, the complainant's own testimony, according to appellant, was
"riddled" with inconsistencies, rendering her account of the events that evening
unreliable. She initially stated that she accompanied her mother to pick up appellant
at the airport but later stated that she did not. Further, the complainant could not
recall whether she told Rundle that appellant had assaulted her during the piggyback
ride at the liquor store. Appellant argues that, because Rundle did not mention the
piggyback ride during her own testimony, the complainant's testimony is the only
evidence that the piggyback ride and accompanying assault occurred. Finally,
appellant argues that the complainant apparently did not mention to Rundle
appellant's inappropriate behavior in the bathroom that evening, despite her
testimony that she spoke to her parents before going to bed. Appellant argues that,
in light of the inconsistencies accompanying the complainant's testimony, a
reasonable inference exists that the complainant fabricated the piggyback ride and the
accompanying assault. Appellant therefore argues that the complainant's credibility
regarding the entire chain of events is questionable.

 It is the jury's responsibility to fairly resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from the evidence. Cobb v.
State, 93 S.W.3d 1, 4 (Tex. Crim. App. 2000). The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is also the
exclusive province of the jury to reconcile conflicts in the evidence. Wesbrook, 29
S.W.3d at 111. The jury may accept or reject any evidence presented. Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

 Here, the jury apparently chose to believe the complainant. The complainant
stated that she clearly saw appellant through the light coming into her bedroom
window, and that it was appellant who sexually assaulted her that evening. The
complainant described the assault in detail and her account is corroborated to some
degree by both the results of her medical examination and her mother's testimony
about her demeanor after the assault. 

 This evidence, when viewed in the light most favorable to the verdict, was
sufficient to allow a rational jury to have found appellant guilty of the offense beyond
a reasonable doubt. Wesbrook, 29 S.W.3d at 111. Further, after reviewing all the
evidence, both for and against the verdict, the proof of appellant's guilt is not so
obviously weak as to undermine confidence in the jury's determination, nor is the
proof of guilt, although adequate if taken alone, greatly outweighed by contrary
proof. King v. State, 29 S.W.3d at 563. We overrule appellant's first and second
points of error. 

Inadmissible Hearsay

 In his third point of error, appellant complains that the trial court erred when
it allowed Rundle to testify about the conclusions she drew as a result of her
conversation with the complainant. Appellant argues that this testimony was
inadmissible hearsay. We review a trial court's ruling on the admission of evidence
for an abuse of discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996). 

 "Hearsay" is a statement, other than one made by the declarant while testifying
at trial, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). An
exception to the general prohibition on hearsay allows the introduction of the out-of-court statement by a child abuse victim to the first adult person describing an alleged
offense. See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2003). Under
article 38.072, a hearsay statement is admissible if (1) the State provides timely notice
to the defendant of its intention to introduce an outcry statement, (2) the trial court
finds, in a hearing conducted outside the presence of the jury, that the statement is
reliable based on the time, content, and circumstances of the statement, and (3) the
child testifies or is available to testify at trial. Id. at § 2(b)(1-3).

 Here, however, the State did not attempt to introduce Rundle's testimony in the
form of an outcry witness. Instead, the State asked Rundle whether, based on her
conversation with her daughter, Rundle herself believed that appellant had assaulted
the complainant. Appellant contends that this amounted to attempting to admit the
complainant's initial outcry statement to her mother as backdoor hearsay evidence. 
The Court of Criminal Appeals has stated that, even if an out-of-court statement itself
is not introduced, the hearsay rule may apply if testimony allows the jury to ascertain
the purport of the statement. Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. App.
1989). Appellant argues that, under the rule articulated in Schaffer, the trial court
erred in allowing Rundle to testify that she had reason to believe appellant assaulted
the complainant.

 However, it is well settled that the admission of hearsay evidence does not
constitute reversible error if the same facts were proven by evidence introduced
elsewhere without objection. See Thomas v. State, 621 S.W.2d 158, 164 (Tex. Crim.
App. 1980). If the fact to which the hearsay relates is sufficiently proven by other
competent and unobjected-to evidence, admission of the hearsay is properly deemed
harmless. Livingston v. State, 739 S.W.2d 311, 333 (Tex. Crim. App. 1987). At trial,
the complainant herself testified about her conversation with Rundle that afternoon. 
In her testimony, the complainant gave an account of the details she told Rundle
about the assault. Appellant raised no objection to the complainant's testimony about
her conversation with Rundle. Thus, any possible error resulting from the trial
court's overruling appellant's objection to Rundle's testimony was harmless.
Accordingly, we overrule appellant's third point of error.

Ineffective Assistance of Counsel

 In his fourth and fifth points of error, appellant argues that he received
ineffective assistance from his trial counsel because his trial counsel failed to object
to victim-impact testimony in the guilt stage as well as in the punishment stage of
trial, and other errors cumulatively rendered his trial counsel's performance
ineffective.

 When reviewing whether an appellant was denied his right to effective
assistance of counsel, we apply the usual standard of review. See Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999). Under the two-prong Strickland standard,
a defendant must "first show that counsel's performance was deficient, i.e., that his
assistance fell below an objective standard of reasonableness," and then, "assuming
appellant has demonstrated deficient assistance, it is necessary to affirmatively prove
prejudice." Id. Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

 In evaluating the effectiveness of counsel under the first prong of Strickland,
the totality of the representation and the particular circumstances of each case are
reviewed. Thompson, 9 S.W.3d at 813. The issue is whether counsel's assistance
was reasonable under all the circumstances and prevailing professional norms at the
time of the alleged error. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. 
"[C]ounsel is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment." Id. 466
U.S. at 690, 104 S. Ct. at 2066. Thus, "the defendant must overcome the presumption
that, under the circumstances, the challenged action might be considered sound trial
strategy." Id. Scrutiny of counsel's performance must be highly deferential, and
every effort must be made to eliminate the distorting effects of hindsight. Id., 104 S.
Ct. at 2065. Accordingly, the presumption that an attorney's actions were sound trial
strategy ordinarily cannot be overcome absent evidence in the record of the attorney's
reasons for his conduct. Busby v. State, 990 S.W.2d 263, 268-69 (Tex. Crim. App.
1999). However, an exception to the presumption of strategy exists when the record
clearly confirms that no reasonable trial counsel would have engaged in the
complained of conduct or omission. Vasquez v. State, 830 S.W.2d 948, 951 (Tex.
Crim. App. 1992). Holding counsel ineffective in light of such a record is not
speculation because the deficient performance is confirmed by the appellate record. 
Id. 

 If counsel's performance fell below the objective standard of reasonableness
set forth in the first prong of Strickland, the reviewing court must then decide whether
there is a "reasonable probability" the result of the trial would have been different but
for counsel's deficient performance. A reasonable probability is a "probability
sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104
S. Ct. 2052.

 Appellant argues that his trial counsel failed to properly object to the admission
of victim-impact evidence contained in the records from Texas Children's Hospital
admitted during Dr. Hayes' testimony at the guilt/innocence stage, and that the
records bolstered the testimony of the complainant's parents during the punishment
stage. Additionally, appellant complains that his trial counsel failed to object to
Rundle's statement in the punishment stage that appellant should be incarcerated, and
that this failure harmed appellant by improperly influencing the jury to choose
confinement over probation. Finally, appellant asserts that his trial counsel's
performance, in the totality of his representation, was so deficient that it cannot be
considered effective assistance of counsel under Strickland.

 We first turn to appellant's contention that his trial counsel failed to properly
object to victim-impact testimony contained in the medical records introduced at the
guilt/innocence stage of his trial. Appellant's trial counsel unsuccessfully objected
to the introduction of the records on the grounds that the records contained
inadmissible hearsay. 

 Although victim-impact testimony may be admissible during the punishment
stage if it "has some bearing on the defendant's personal responsibility and moral
guilt," Stavinoha v. State, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991), such evidence
has been held irrelevant and inadmissible during the guilt/innocence stage. Miller-El
v. State, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990). However, without addressing
whether trial counsel's failure to object to such evidence was deficient, we note that
other unobjected-to evidence of the complainant's parents' distress was admitted
elsewhere during the guilt/innocence stage. On appeal, appellant does not question
the propriety of that evidence. As a result, the statements contained in the records
were merely cumulative. Inadmissible evidence can be rendered harmless if other
evidence at trial is admitted without objection and proves the same fact that the
inadmissible evidence sought to prove. Brown v. State, 757 S.W.2d 739, 741 (Tex.
Crim. App. 1988). Accordingly, appellant has failed to establish that it is a
"reasonable probability" the result of the trial would have been different if his trial
counsel had objected to the admission of the hospital records. Strickland, 466 U.S.
at 694, 104 S. Ct. 2052. 

 In regard to appellant's complaint that his trial counsel failed to object to
Rundle's punishment stage testimony that appellant should be incarcerated, we note
that a witness may not recommend to the trier of fact a particular punishment. See
Sattiewhite v. State, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989). As before,
however, regardless of whether appellant's trial counsel was deficient for failing to
object to Rundle's statement, appellant cannot surmount the burden of Strickland's
second prong--that there is a "reasonable probability" the result of the trial would
have been different if he had objected to Rundle's testimony. Strickland, 466 U.S.
at 694, 104 S. Ct. 2052. During the punishment stage, the trial court instructed the
jury that, if it assessed a punishment that did not exceed ten years' imprisonment and
found that appellant had never been convicted of a felony, then it had the option of
recommending probation. The jury assessed appellant's punishment at twenty years'
incarceration, rendering him ineligible for a recommendation of probation. Thus, we
cannot say that our confidence in the outcome of appellant's trial is undermined. We
overrule appellant's fourth and fifth points of error.

Extraneous-Offense Evidence

 In his sixth point of error, appellant contends that the trial court committed
reversible error when it allowed the State to impeach his testimony that he had been
honorably discharged from the Marines. A trial court's admission of extraneous-
offense evidence is reviewed for abuse of discretion. Rankin v. State, 974 S.W.2d
707, 718 (Tex. Crim. App. 1996) (op. on reh'g). 

 Appellant argues that the evidence introduced violated the trial court's
discovery orders, in which the trial court ordered the State to turn over all records of
conviction which might be admissible in evidence or used for impeachment, and
which granted appellant's request for notice of the State's intent to use evidence of
any prior conviction to impeach appellant's credibility. Appellant contends that the
State failed to produce evidence of appellant's extraneous offenses, and the trial
court's decision to allow the State to impeach appellant with evidence of his
extraneous offenses, despite the discovery order, harmed him by denying him an
opportunity to prepare a response to the prosecution's accusations. 

 No notice of extraneous offenses is needed if the extraneous offense is
introduced as impeachment evidence to contradict statements made by a defendant 

during the punishment stage. See Washington v. State, 943 S.W.2d 501, 506 (Tex.
App.--Fort Worth 1997, pet. ref'd). Accordingly, the trial court did not err in
admitting this evidence of appellant's extraneous offenses or prior bad acts. We
overrule appellant's sixth point of error.

Conclusion

 We affirm the judgment of the trial court. 

 

 




 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Jennings, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).
1. These records were not introduced into evidence and do not appear in the
appellate record.