Opinion issued October 26, 2006 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-01071-CR
__________
 
DAVID JAMES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellees
 

 
 
On Appeal from the 12th District Court
Walker County, Texas
Trial Court Cause No. 21928
 

 
 
MEMORANDUM OPINION
          A jury found appellant, David James, guilty of the offense of aggravated sexual
assault of a child


 and assessed punishment at confinement for sixty years and a fine
of $10,000. In two issues, appellant contends that the evidence is legally insufficient
to support his conviction and that the trial court erred in excluding evidence of a
sexual encounter between him and the complainant that allegedly occurred
approximately one week prior to the offense. 
          We affirm. 
Factual Background
          Walker County Sheriff’s Deputy Jaime Diaz testified that, in October 2002, he
was dispatched to the complainant’s home, where he met the thirteen-year-old
complainant at 7:45 p.m. Several other relatives of the complainant and appellant
were also present, including Eunice Upson and Iva Rigsby. The complainant, who
was scared and in shock, told Diaz that appellant, his uncle, sexually assaulted him
earlier that evening in appellant’s bedroom in another uncle’s trailer, which was
located on the same piece of property as other trailers occupied by the complainant
and other family members. 
          While Diaz was at the complainant’s home, appellant called the home to
determine why Diaz was there. The complainant’s mother handed Diaz the telephone
and told him that appellant was on the phone. Diaz identified himself to appellant
and explained to appellant that he did not have to speak with him. Appellant then
told Diaz that he did not force the complainant to perform oral sex on him, that he had
taken medication and was confused, and that he was not sure what he did. 
          On cross-examination, after appellant’s counsel handed Diaz a copy of his
interview with Upson, Diaz agreed that Upson had told him that the assault occurred
at approximately 10:30 p.m. on October 24, 2002. Diaz also agreed that this time
conflicted with what the complainant had told him about the timing of the offense. 
However, Diaz also explained that it was possible that he did not correctly remember
what the complainant had told him. 
          The complainant testified that one day in October 2002, he was at his uncle
Richard’s trailer waiting for his aunt to come home from work. Upson and appellant
were also living in the trailer at the time. The complainant explained that while he
was in Richard’s bedroom, appellant was in the living room and Upson was asleep
on the couch in the living room. Appellant called the complainant into the living
room and asked the complainant to give him his medicine. When the complainant
handed appellant his medicine, appellant told the complainant to sit on the couch by
him. Appellant then told the complainant to “suck it,” and the complainant told
appellant “no.” Appellant then told the complainant “come on, its my birthday.”
Again, the complainant told him “no,” but appellant “kept on pressuring.” Appellant
threatened “to tell people stuff about [the complainant] that wasn’t true,” like that he
was gay. Appellant then “got [the complainant’s] head,” “put [the complainant’s]
head in his lap,” and “told [the complainant] to suck it like a lollipop.” Appellant
then put his penis in the complainant’s mouth. Appellant was “moving a little” and
had his hands on the complainant’s back. Appellant said “that’s it right there,” and
ejaculated in the complainant’s mouth. When appellant told the complainant he was
finished, he let the complainant up and told him not to tell anyone. The complainant
then went to another trailer, and later told his uncle Anthony, his mother, and his
father what had happened. The complainant testified that he “felt used.”
          On cross-examination, the complainant stated that the assault probably
happened between 11:00 p.m. and 1:00 a.m. He explained that on the day of the
incident, a number of people, including appellant, were playing dominos at a family
member’s trailer, and that he had left that trailer around 11:00 p.m. to go to Richard’s
trailer. The complainant denied leading appellant from the dominos game to
Richard’s trailer. He also testified that the lights in the living room were off when the
assault occurred. 
          Eunice Upson testified that in October 2002, he was staying at Richard’s trailer
along with appellant. One day between October 24 and October 26 2002, while he
was asleep on the couch, Upson overheard appellant say “something about a birthday
present.” Upson awoke, opened his eyes, and saw appellant and the complainant. 
Although the lights were off and Upson did not see appellant’s penis in the
complainant’s mouth, Upson knew “from the body part what was happening.” Upson
saw the complainant’s head “going up and down” on appellant’s “private part” and
heard appellant tell the complainant to “suck it like a popsicle.” Upson wiped his
eyes because he could not believe what was happening. Upson stated that “after that
. . . I know that he’s talking to him in that kind of manner, sucking and all that . . .
ejaculating in his mouth and all that . . . that’s part of . . . what I seen.” 
          Iva Rigsby, appellant’s niece, testified that after the assault, she asked appellant
why everybody was mad at him, and he told her because “his penis was in [the
complainant’s] mouth.” Appellant told Rigsby not to tell anyone, especially her
brother, who was the complainant’s father. Appellant explained to Rigsby that after
he left a party where he had a few drinks, he took his medication and awoke to find
that the complainant had appellant’s pants down. When Rigsby asked appellant why
he did not stop the complainant, appellant replied that “[the complainant] was almost
done.” Appellant told her that it was a “birthday present.”
          Appellant testified that on the evening of the offense, he was playing dominos
and had “a sip” to drink. He explained that he is epileptic and that, after taking a sip
of his drink, he began to sweat. The complainant led appellant back to Richard’s
trailer and put him on the couch, and appellant asked the complainant to bring him
his medication and some water. Appellant took his medication and “passed out” after
Upson had put two fans on him. Appellant awoke the following morning at
approximately 3:00 or 4:00 a.m., and Upson told appellant about two epileptic
seizures that appellant had suffered the night before. Appellant then got a drink of
water, went back to sleep, and was awakened around 6:30 a.m. by the complainant’s
uncle, who was getting home from work and was knocking on the front door. 
Appellant opened the door and went back to sleep. 
          Appellant awoke later around 10:30 a.m. and Rigsby approached him and
asked him about what had happened between him and the complainant. Rigsby did
not let appellant finish what he was saying, and she left the trailer. Appellant stayed
at Richard’s trailer that day, and then went to the house of one of his other nieces. 
Appellant spoke with Rigsby on the telephone that night, and she told appellant that
the police were at the complainant’s house. Appellant told Rigsby that he did not do
anything. Appellant then spoke to a police officer, who told him that he needed to
surrender himself. Appellant testified that he did not force the complainant to
perform oral sex on him.
          On cross-examination, appellant stated that prior to the incident, he had been
playing dominos with friends, fixed one drink of gin and grapefruit juice, and took
“only one swallow” of that drink, which he did not finish. He explained that he takes
his epilepsy medication twice a day and that his doctor had previously told him not
to drink large amounts of alcohol while on medication. Appellant reiterated that the
complainant led him back to Richard’s trailer, that the complainant gave him his
medication and he took it, and that he immediately passed out. Appellant denied
having a conversation with Rigsby on the night of the offense, but stated that he
spoke with her the morning after. Appellant said that he left Richard’s trailer the next
night because someone had threatened to kill him. Finally, appellant testified that the
complainant, Rigsby, and Upson were lying and that he did not recall the incident in
question. 
Legal Sufficiency
          In his first issue, appellant argues that the evidence is legally insufficient to
support his conviction because he denied that he sexually assaulted the complainant
and there is “no physical evidence or biological evidence of a sexual assault having
occurred.” 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). A review of the
evidence for legal sufficiency does not involve a re-weighing of the evidence or a
substitution of the fact finder’s judgment. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). We note that the fact finder is the exclusive judge of witness
credibility, the determiner of the weight accorded to witness testimony, and the
reconciler of conflicts in the evidence. Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996). 
          A person commits the offense of aggravated sexual assault of a child if the
person intentionally or knowingly causes the penetration of the mouth of a child by
the sexual organ of the actor and the child is younger than fourteen years of age. Tex.
Pen. Code Ann. § 22.021(a)(1)(B)(ii), (2)(B) (Vernon Supp. 2005). 
          Here, the complainant testified that after appellant called him into the living
room to give him his medicine, appellant told the complainant to sit on the couch by
him and to “suck it.” Although the complainant told appellant “no” several times,
appellant stated “its my birthday” and “kept on pressuring” the complainant. 
Appellant, after threatening “to tell people stuff about [the complainant] that wasn’t
true,” “got [the complainant’s] head,” “put [the complainant’s] head in his lap,” “told
[the complainant] to suck it like a lollipop,” and put his penis in the complainant’s
mouth. After appellant ejaculated in the complainant’s mouth and told the
complainant he was finished, appellant let the complainant up and told the
complainant not to tell anyone. We note that the testimony of a complainant,
“standing alone, is sufficient to support a conviction for sexual assault.” Villalon v.
State, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990). 
          Additionally, Upson testified that he was asleep on the couch when he
overheard appellant say “something about a birthday present.” Upson woke up, saw
the complainant’s head going up and down on appellant’s “private part,” and heard
appellant tell the complainant to “suck it like a popsicle.” Rigsby testified that
appellant admitted to her that his penis had been in the complainant’s mouth. 
Specifically, appellant told Rigsby that after he left a party, he took his medication
and woke up to find that the complainant had his pants down and that he did not stop
the complainant when he woke up because the complainant “was almost done.” 
Appellant also told Rigsby that it was a “birthday present.” 
          It is true that the State did not offer any physical or biological evidence at trial,
and appellant did testify that he had “passed out” on the couch, denied that he had
forced the complainant to perform oral sex, and stated that the complainant, Rigsby,
and Upson were lying. However, the jury is the sole judge of the credibility of the
witnesses at trial and it was free to accept the testimony of the complainant, Upson,
and Rigsby and reject the testimony of appellant. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). Viewing all the evidence in the light most favorable to the
jury’s verdict, we conclude that a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Accordingly, we hold that the
evidence is legally sufficient to support appellant’s conviction for the offense of
aggravated sexual assault of a child.
          We overrule appellant’s first issue.
Prior Sexual Encounter
          In his second issue, appellant contends that the trial court erred in excluding
evidence of an alleged sexual encounter between appellant and the complainant that
occurred approximately one week prior to the instant offense. Appellant asserts that
the “prior sexual encounter closely resembled the act alleged against appellant in the
indictment” and that evidence of this prior sexual encounter was relevant and was
more probative than prejudicial.
          We review a trial court’s decision to exclude evidence under an abuse of
discretion standard. Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). 
Therefore, we will not reverse a trial court as long as its ruling was within the “zone
of reasonable disagreement.” Green, 934 S.W.2d at 102.
          During appellant’s direct-examination, appellant informed the trial court that
he intended to testify regarding the extraneous incident. The basis of appellant’s
offer was to establish that the complainant had previously tried to perform oral sex
on appellant and that appellant was under the influence of drugs and alcohol, was
epileptic, and did not know what was happening at the time of the offense.           The trial court conducted an in-camera hearing, in which appellant testified that
in the week preceding the assault, he was in the restroom in Richard’s trailer giving
himself a sponge bath. The complainant knocked on the door and asked to use the
restroom, and appellant let him into the restroom. Appellant stated that as he was
getting dressed, the complainant “went down on [him]” and the complainant “put
[appellant’s] private in [his] mouth.” Appellant stated that he pushed the complainant
away and asked him what he was doing. The complainant told appellant that “he was
going to give [appellant] some more later,” and appellant told him “no, you’re not,
go home.” 
          The State argued that this evidence was inadmissible under Texas Rule of
Evidence 412, which provides that “[i]n a prosecution for . . . aggravated sexual
assault . . . reputation or opinion evidence of the past sexual behavior of an alleged
victim of such crime is not admissible.” Tex. R. Evid. 412(a). Rule 412(b) further
provides:
In a prosecution for . . . aggravated sexual assault . . . evidence of
specific instances of an alleged victim’s past sexual behavior is also not
admissible, unless:
 
          . . . . 
 
(2)     it is evidence:
 
          (A)    that is necessary to rebut or explain scientific or medical
evidence offered by the State;
 
          (B)    of past sexual behavior with the accused and is offered by
the accused upon the issue of whether the alleged victim
consented to the sexual behavior which is the basis of the
offense charged;
 
          (C)    that relates to the motive or bias of the alleged victim;
 
          (D)    is admissible under Rule 609; or
 
          (E)     that is constitutionally required to be admitted; and
 
(3)     its probative value outweighs the danger of unfair prejudice.
 
Id. No other evidence was presented at the in-camera hearing. At the conclusion of
the hearing, the trial court ruled that appellant’s testimony was not admissible and
that its probative value did not outweigh the danger of unfair prejudice. 
          In his brief, appellant asserts that his testimony regarding the alleged prior
sexual encounter should have been permitted under rule 412(b)(2)(B), which pertains
to consent, and rule 412 (b)(2)(C), which pertains to motive and bias. In regard to
rule 412(b)(2)(B), consent was not an issue relevant to appellant’s guilt or innocence
of the offense of aggravated sexual assault of a child and this testimony was not
admissible under this exception. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(ii); see
also Reed v. State, 991 S.W.2d 354, 361 (Tex. App.—Corpus Christi 1999, pet. ref’d)
(“Consent is not in issue where the charged offense is sexual assault of a child
because a victim under age seventeen is legally incapable of consenting.”); Jones v.
State, 789 S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1990, pet. ref’d)
(same). 
          In regard to rule 412(b)(2)(C), appellant did not provide the trial court with any
explanation regarding how the alleged prior sexual encounter would tend to show
motive or bias by the complainant. Rather, appellant offered the testimony to
establish that appellant did not know what was happening and that the complainant
had previously voluntarily performed oral sex on appellant. Following the in-camera
hearing, the State asserted that appellant had not made a showing of motive or bias. 
Although the trial court made findings on each of the exceptions in rule 412(b),
including a finding that the evidence did not relate to motive or bias, the court
specifically stated that appellant “hasn’t even said that.” We agree that appellant did
not present the trial court with any explanation regarding how the excluded testimony
would tend to show motive or bias by the complainant, and appellant has failed to
offer any additional explanation on appeal. 
          Accordingly, we hold that the trial court did not err in excluding the proffered
testimony under rule 412(b). Thus, we need not address appellant’s argument that the
trial court further erred in concluding that the probative value of the proffered
testimony did not outweigh its danger of unfair prejudice. See Tex. R. App. P. 47.1.
          We overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court. All pending motions are denied.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).