02-10-165-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00165-CR

 

 


 
 
 Dwayne Anthony James
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

 

OPINION

----------

I.  Introduction

 

          In
three issues, Appellant Dwayne Anthony James appeals from his conviction for
aggravated assault with a deadly weapon.  We affirm.

II.  Factual and
Procedural Background

 

          James
and Christopher Spain worked for Rude Boy Entertainment.  Omololu Akinlolu
(Omar), a rapper, testified that Rude Boy Entertainment had not paid him the
$2,000 it owed him for his songs, so he contacted James on September 17, 2008,
and Spain on September 18, 2008.  Spain informed Omar that Rude Boy
Entertainment executive Andrew Schuster was nearby and would deliver partial
payment.  Omar was subsequently shot in a drive-by shooting, identified James
and Spain as the shooters, and gave police permission to search his phone.

          The
State charged James and Spain with commission of the offense, and they elected
to try their cases together.  The jury found both James and Spain guilty of
aggravated assault with a deadly weapon and sentenced each to fifteen years’
confinement.  This appeal followed.

III.  Exclusion of
Evidence

 

          In
his first issue, James claims that the trial court’s exclusion of evidence
denied him the right to present a complete defense.  In his second issue, James
contends that the trial court abused its discretion by excluding evidence
regarding the contents of the cell phone as hearsay.

A. 
Trial Objections

          While
cross-examining Omar, James’s counsel, Kathy Lowthorp, attempted to elicit
testimony that others besides the defendants had a motive to harm Omar.  First,
regarding Omar’s testimony that he occasionally stayed at Schuster’s home in
Grand Prairie, Lowthorp asked Omar whether he had heard that a drive-by
shooting had occurred outside Schuster’s home and whether anyone knew that Omar
occasionally stayed there.[1]  Outside the presence of
the jury, the trial court cautioned Lowthorp that she had violated the motion
in limine regarding prior bad acts and that it must not happen again.  The
State then objected to this question as hearsay, and the trial court sustained
this objection.  Next, Lowthorp asked Omar to discuss the YouTube video that publicly
broadcasted Omar discussing “beef” he had with rappers at a club.  The State
objected on the ground of relevance, and the trial court sustained this
objection.  Lowthorp then requested permission to make a bill of exception,
which the trial court allowed, and which included the following, in relevant
part:

Q. [Lowthorp:] Is
there any motive out there for why anyone else would be mad at you?

 

A.  No.

 

Q.  No one –
there is no reason why anyone else out there would be mad at you in the last
few years?

 

A.  Not enough
to kill me – try to kill me.

 

          THE
COURT:  I can’t understand what you’re saying.

 

A.  No.

 

Q.  [Lowthorp:] But
the money in this case was enough motive for someone to want to kill you for
$2,000?

 

A.  That’s what
they tried to do.

 

Q.  Okay. 
That’s not a lot of motive.  Do you think that’s a lot to kill someone over
$2,000?

 

A.  That’s why I
couldn’t believe that they shot me over $2,000.

 

Q.  On that
level, is there anyone else that would have similar types of motive to want to,
you know, retaliate against you for any reason whatsoever?

 

A.  No, ma’am.

 

Q.  No.  And the
reason why you had a fight in the club had nothing to do with any possible
motive for any reason to fight you but to fight you, correct?

 

A.  No, ma’am. 
We was in the DJ booth, and we just got in an argument, because our previous
beef was already squashed because we was cool for a long time.  We got into it
again in the DJ booth.

 

Q.  What was his
beef?

 

A.  It was just
some – really behind a chick at the end of the day, behind a woman, behind a
female at the end of the day.

 

Q.  And I’m
sorry, didn’t mean to interrupt you.  And behind a woman is not enough reason
to want to retaliate against someone.

 

A.  No, ma’am.

 

Q.  So no one
has ever been killed before because of a woman?

 

          [State]: 
Objection to relevance.

 

          THE
COURT:  Sustained.

 

Q.  [Lowthorp:] This
is a very competitive business, isn’t it?

 

A.  Yes, ma’am.

 

Q.  And that
there would not be a reason for motive to want to put harm to you?

 

A.  No ma’am,
because if you trying to make it in the business, you ain’t going to try to
risk it all.

 

Q.  But these
guys here tried to do that; is that right?

 

A.  Yes, ma’am. 
Yeah, they did.

 

Q.  Okay.  So
they were willing to risk everything?

 

A.  They did.

 

Q.  And so could
someone else; isn’t that possible?

 

A.  They did.

 

          [State]: 
Objection, calls for speculation.

 

          THE
COURT:  Sustained.

 

Q.  [Lowthorp:] So
why are you Segal?

 

[State]: 
Objection to relevance.  I don’t think there’s ever been any testimony that he
equated himself to Segal.  There was some mention of YouTube, but he’s never
equated himself to Segal.

 

THE COURT:  I’m
going to overrule the objection.  You may answer.

 

A.  I just said that one time on the DVD, because they was talking
about – ugh, I got jumped in the club, got beat up and stuff.  I just said,
“I’m Segal, I know how to protect myself.”

          The
next morning, after considering Lowthorp’s bill, the trial court approved a
list of questions for Lowthorp to ask:

THE COURT: . . .
Here’s the only questions that are allowed:  “Are you aware of people that
could have a problem with you, as far as you know, might have a beef with you? 
Could they be the type of people that could carry guns?”

 

. . . .

 

THE COURT:  And “you
are” – then your question was, “The type of people that would want to get into
a fight?”  That’s allowed.

 

“Is there any motive
out there for why anyone else would be mad at you?”  That’s allowed.

 

No one there – is no
– okay.  “Is there a reason why anyone else out there would be mad at you in
the last few years?”  And that’s allowed if you alter it to be more close in
time.  “Last few years” is not allowed.  In the last – during this period of
time at the time of the offense.

 

The question, “But
the money in this case was enough motive for someone to want to kill you for
$2,000?”  That’s allowed.  The question is allowed.

 

“That’s not a lot of
motive – do you think that’s a lot of – that’s a lot to kill someone over
$2,000?”  That’s allowed.

 

On that level – this
question is allowed:  “On that level, is there anyone else that would have
similar types of motive that would want to retaliate against you for any reason
whatsoever?”

 

“This is a very
competitive business, isn’t it?”  That question is allowed.

 

“And there – and that
the competitive business would not be a reason for motive to want to put harm
to you?”  That’s allowed.

 

This question is
allowed:  “But these guys here tried to do that; is that right?”

 

And then the
question:  “Okay.  So they were willing to risk everything?”

 

And
the question:  “So why are you Segal – Segal?”[2]

          Later,
Lowthorp sought to establish that Omar had intentionally deleted text messages,
allegedly related to the collection of payment, from his phone.  To this end, Lowthorp
offered, and the trial court admitted, Omar’s official T-Mobile phone records
into evidence.  To show the disparity between these records and the information
stored on Omar’s phone, Lowthorp called Arlington Police Detective Huey Nguyen
to testify about the information he extracted from Omar’s phone.

          Detective
Nguyen explained that phone numbers can be stored in two different places on a
phone—the SIM card and the phone itself.  Lowthorp questioned Detective Nguyen
regarding Omar’s SIM card, but when she asked Detective Nguyen for the dates of
the four text messages retrieved from the SIM card, the State objected on the
grounds of hearsay and lack of proper authentication.  The trial court sustained
this objection on both grounds.

          Outside
the jury’s presence, Lowthorp asked the same question about the text message
dates, and the State objected on the ground of relevance.  The trial court
sustained the objection as to the messages predating the September 18 shooting
but granted Lowthorp permission to ask if the SIM card contained messages that were
sent or received on that date and, if not, why not.  The State also objected on
the basis of hearsay to Lowthorp’s proposed question regarding whether any of
the text messages were to or from a particular phone number.  The trial court
sustained this objection.

          Before
the jury, Detective Nguyen testified about the method he used to record data
from Omar’s cell phone itself, as distinct from the SIM card.  He used a
Project-a-Phone, which video-recorded the phone’s screen as he scrolled through
the phone’s contents.  When Lowthorp offered these video clips, the State
objected to hearsay, and the trial court sustained the objection.  Upon Lowthorp’s
request, the trial court admitted the video clips for the record only.

B.  Applicable Law

          Only
relevant evidence is admissible.  Tex. R. Evid. 402.  Relevant evidence is
evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.  Tex. R. Evid. 401.  However, even if
evidence is relevant, it can be excluded as hearsay.  See Tex. R. Evid.
802.  Hearsay is a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of
the matter asserted.  Tex. R. Evid. 801(d).

          An
appellate court reviews a trial court’s decision to exclude evidence for an
abuse of discretion and will not reverse a trial court’s ruling unless that
ruling falls outside the zone of reasonable disagreement.  Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001) (citing Green v. State, 934
S.W.2d 92, 101–02 (Tex. Crim. App. 1996)); see also Montgomery v. State,
810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990).  To preserve error
from a ruling that excludes evidence, the proponent must provide the specific
purpose for which the evidence is offered and the reasons why the evidence is
admissible.  Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005)
(“[I]t is not enough to tell the judge that evidence is admissible.  The
proponent, if he is the losing party on appeal, must have told the judge why
the evidence was admissible.”).

          Further,
the United States Constitution guarantees criminal defendants “a meaningful
opportunity to present a complete defense.”  Crane v. Kentucky, 476 U.S.
683, 690, 106 S. Ct. 2142, 2146 (1986).  An erroneous evidentiary ruling denies
a defendant this right when, in pertinent part, the ruling is clearly erroneous
and excludes “otherwise relevant, reliable evidence which forms such a vital
portion of the case that exclusion effectively precludes the defendant from
presenting a defense.”  Wiley v. State, 74 S.W.3d 399, 405
(Tex. Crim. App.) (internal quotation marks omitted), cert. denied, 537
U.S. 949 (2002).

C. 
Analysis

1.  Exclusion
of Evidence

          In
his second issue, James argues that a cell phone’s SIM card and data saved to a
cell phone’s hard drive are not hearsay and should not have been excluded.

          a. 
SIM Card 

          In
part of his second issue, James claims that the trial court abused its
discretion by excluding testimony about the text message dates as hearsay. 
However, as the same information was also excluded on relevance grounds, which
James does not address, we do not reach this hearsay argument.  See Tex.
R. App. P. 38.1; Marsh v. State, 343 S.W.3d 158, 161–62 (Tex.
App.—Texarkana 2011, pet. ref’d) (stating that an appellant must attack all
independent grounds supporting a trial court’s ruling).  Likewise, we do not
reach James’s other hearsay argument about text messages to or from a
particular phone number because he also fails to address the trial court’s
relevance ruling on this question.  See Tex. R. App. P. 38.1; Marsh,
343 S.W.3d at 161–62.  We overrule this portion of James’s second issue.

b.  Project-a-Phone Video Clips

          In
the remainder of his second issue, James claims that the trial court abused its
discretion by excluding video clips created by the Project-a-Phone.[3]

          After
the trial court sustained the hearsay objection to the videos, Lowthorp did not
specify the purpose for which she was offering the videos or why the videos
were admissible.  She merely asked the trial court to admit the videos for the
record and asked Detective Nguyen questions regarding his care, custody, and control
of the videos.  Because Lowthorp did not apprise the trial court of the purpose
for which she was offering the videos, it is impossible for us to determine
whether she was offering them for the truth of their content and, thus, whether
the videos were admissible.  See Reyna, 168 S.W.3d at 179 (deciding that
the trial court did not err since the appellant “did not clearly articulate” at
trial why the evidence should be admitted).  We overrule the remainder of
James’s second issue.

2.  Right
to Present a Complete Defense

          In his first
issue, James argues that he was denied the right to present a complete defense
by the trial court’s “exclusion of evidence that would have suggested that a
third party may have committed the shooting[.]”

          James
contends that he was entitled to elicit testimony that (1) Omar spoke on
YouTube of others wanting to hurt him,[4] (2) a drive-by shooting
occurred at Omar’s part-time Grand Prairie residence less than two months
before the instant shooting, and (3) Omar intentionally deleted cell phone
calls and messages from his phone.  According to James, had the trial court
permitted the jurors to hear evidence that other persons wanted, and might have
already tried, to harm Omar, they might have considered the defense’s theory
that someone else committed the offense.

          As
James concedes, however, the trial court did not preclude him from eliciting
testimony consistent with this theory.  Indeed, after considering Lowthorp’s
bill of exception, as set out above, the trial court approved a series of
questions that could have elicited the same information and that were phrased
much like Lowthorp had asked them in her bill.  The only apparent limitations
on the questions were (1) counsel could not ask Omar what he said in the
YouTube video, (2) counsel could not ask Omar if he had heard that a shooting
occurred outside Schuster’s home at which Omar occasionally stayed, (3) counsel
could not ask questions regarding motive to hurt Omar except as to motive
existing at the time of the offense, (4) counsel could not ask Omar about a
specific fight in a club, and (5) counsel could not ask Omar to speculate
whether someone else would be willing to “risk everything.”

          While
these rulings limited the questions that Lowthorp could ask, only Omar’s responses
and Lowthorp’s trial tactics limited the defense that James was able to present. 
See Wiley, 74 S.W.3d at 405.  The first limitation did not prevent
Lowthorp from asking the approved question that, when she asked it in the bill
of exception, elicited testimony related to Omar’s YouTube statements about who
might have “beef” with him.  However, defense counsel did not ask this question
before the jury.

          The
second limitation did not prevent Lowthorp from introducing testimony about the
prior shooting.  Indeed, when sustaining the hearsay objection to Lowthorp’s
question to Omar regarding the prior shooting, the trial court mentioned that
the evidence might be admissible another way.  Further, Lowthorp was still able
to offer a police officer’s testimony that a drive-by shooting occurred outside
Schuster’s home on August 4, 2008, and that it was possibly committed by Asian
rappers.  This, combined with Omar’s testimony that he occasionally stayed at Schuster’s
home, allowed the jury to infer that others might have tried to harm Omar.

          The
third limitation did not prevent testimony about motive but merely confined the
testimony to relevant time periods during which the existence of motive would
have had some bearing on whether someone else committed the offense.  See
Tex. R. Evid. 401; Russo v. State, 228 S.W.3d 779, 798 (Tex. App.—Austin
2007, pet. ref’d) (“Questions, as here, of when testimony becomes too remote
and, therefore, irrelevant are left to the sole discretion of the trial
court.”).  Moreover, when Omar’s answers regarding others’ motive to harm him
did not divulge what Lowthorp hoped they would, she could have, as the trial
court mentioned, examined other witnesses.

          While
the fourth limitation prohibited a direct question about Omar’s fight in the
club, it did not altogether forbid testimony about this fight.  Lowthorp was
still allowed to ask if people with a motive to harm Omar would be the type to
get into a fight.  Additionally, as previously discussed, defense counsel chose
not to ask an approved question that, in the bill of exception, elicited Omar’s
testimony regarding the fight in the club.

          Finally,
even though the fifth limitation prevented Omar from speculating about whether
someone else might be willing to “risk everything,” Lowthorp was still
permitted to ask whether the defendants were willing to do so.  Thus, even
though Omar could not testify about matters outside his personal knowledge, the
jury was still able to infer that others would also be willing to “risk
everything.”  See Tex. R. Evid. 602.

          Further,
with regard to James’s argument that he was entitled to elicit testimony that
Omar intentionally deleted cell phone calls and messages from his phone, the
trial court’s rulings on the State’s objections to the SIM card data during
Detective Nguyen’s testimony permitted Lowthorp to ask whether any incoming or
outgoing text messages on September 18, 2008, appeared on the SIM card and, if
not, what the possible reasons for this were.  During Detective Nguyen’s
testimony, Lowthorp was permitted to show the jury the text messages listed in
T-Mobile’s records for the day of the shooting and to present testimony that
the SIM card showed no text messages on the same day, to allow the jury to
infer that Omar had intentionally deleted these messages.

          In
sum, the excluded evidence did not form “such a vital portion of the case” that
exclusion effectively precluded James from presenting a defense because,
despite the limitations and exclusions, Lowthorp was still able to introduce
the same or similar evidence to suggest that a third party committed the
offense and that Omar intentionally deleted cell phone calls and text messages
from his phone.  See Wiley, 74 S.W.3d at 405.  Accordingly, we
conclude that James was afforded his constitutional right to present a complete
defense, and we overrule his first issue.  See Crane, 476 U.S. at 690,
106 S. Ct. at 2146.

IV. 
Ineffective Assistance of Counsel

          In
his third issue, James claims that his conviction was fundamentally unfair due
to the ineffective assistance of counsel.

A.  Standard of Review

          To
establish ineffective assistance of counsel, the appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  The issue is
whether counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s representation is
highly deferential, and the reviewing court indulges a strong presumption that
counsel’s conduct fell within a wide range of reasonable representation.  Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001).  A reviewing court will rarely be
in a position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

          The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Strickland, 466 U.S. at 687, 104 S. Ct. at
2064.  In other words, appellant must show there is a reasonable probability
that, but for counsel’s unprofessional errors, the result of the proceeding
would have been different.  Id. at 694, 104 S. Ct. at 2068.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Id.  The ultimate focus of our inquiry must be on the
fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

B.  James’s Trial

          Pretrial,
the defense attorneys and the trial court agreed that Lowthorp would go first
during each phase of trial but would pass Spain’s witnesses to Spain’s attorney
and reserve the right to examine them if she had further questions.

          During
voir dire, Lowthorp thanked the trial court for letting James and Spain try
their cases together “because we believe that we are saving dollars, tax
dollars[,] on this by trying it, since the facts are all the same for both
parties, and we believe that we are not in conflict with each other.”  When a
member of the venirepanel asked her for clarification about whether these were
two separate cases “but for cost purposes and efficiencies” were being
addressed at the same time, she responded that both defendants were charged
with the same offense arising out of the same incident.

          Of
the State’s eight witnesses, both defense attorneys cross-examined three, and
Spain’s attorney examined the remaining five by himself.

C.  Analysis

          First,
James asserts that he was prejudiced by Lowthorp’s decision to join his trial
with that of his co-defendant and to pass five out of nine State witnesses to
Spain’s attorney.[5]  However, in this case,
like the majority of cases, the record is silent and “cannot adequately reflect
the motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at
740.  Without more, we must presume that Lowthorp’s conduct fell within a wide
range of reasonable representation.  See id.  Indeed, the decision to
pass certain witnesses could have been a strategic decision to allow each
attorney to cross-examine those witnesses with whom he or she felt more
comfortable.  See Coble v. State, 501 S.W.2d 344, 346 (Tex. Crim. App.
1973) (overruling the claim that counsel was ineffective for not
cross-examining three of the nine State witnesses because “[o]ften, the decision
to not cross-examine a witness is the result of wisdom acquired by experience
in the combat of trial”).

          Additionally,
notwithstanding Lowthorp’s statement during voir dire that they were saving tax
dollars by trying the cases together, nothing in the record “adequately
reflect[s] the motives behind trial counsel’s actions” because nothing shows
that they did not try the cases together for James’s benefit.[6] 
Salinas, 163 S.W.3d at 740.  Indeed, when the court of criminal appeals
has held that possessing an economic motive is grounds for an ineffective
assistance of counsel determination, it has only been when the record
affirmatively demonstrates that counsel’s decision could not have been
strategic.  See Ex parte Briggs, 187 S.W.3d 458, 467–68 (Tex. Crim.
App. 2005) (holding that counsel’s action—failing to investigate the victim’s
medical history because counsel had not been paid for experts—rendered counsel
ineffective when “the clear and obvious defense strategy, which [he]
recognized, was to focus on [the victim’s] medical history”); see also Aldrich
v. State, 296 S.W.3d 225, 245 (Tex. App.—Fort Worth 2009, pet. ref’d) (op.
on reh’g) (holding that counsel’s action—failing to timely designate experts in
part because his client was indigent—rendered counsel ineffective when the
record “affirmatively reflect[ed]” that he “repeatedly recognized the need for
defense experts”).

          In
contrast to Briggs and Aldrich, the record in this case does not
affirmatively reflect that Lowthorp’s decision contravened what she recognized
was the appropriate course of action.  See Briggs, 187 S.W.3d at 467–68;
see also Aldrich, 296 S.W.3d at 245.  To the contrary, the
record reveals that the two cases involved the same facts, the same incident, and
two defendants who were not in conflict with each other.  Thus, the record does
not foreclose the conclusion that the decision was a tactical one allowing the
attorneys to work together to present a better defense than either could have
presented alone.

          Also,
James contends that Lowthorp did not remind the jury of the burden of proof
required in a criminal case.  However, as long as the jury is given the correct
legal framework for deciding the case, “[t]he points of the charge that defense
counsel [chooses] to emphasize in argument [is] a matter properly left to the
realm of trial strategy.”  Tong v. State, 25 S.W.3d 707, 713 (Tex. Crim.
App. 2000) (holding that defense counsel was not ineffective for failing to
inform the jury during closing argument that the burden of proof was “beyond a
reasonable doubt”), cert. denied, 532 U.S. 1053 (2001).  Here, even though
Lowthorp did not reiterate that the standard is “beyond a reasonable doubt,” the
trial court’s charge to the jury contained this standard.  Because the trial
court’s charge gave the jury the correct legal framework for deciding James’s
case, Lowthorp was not ineffective for choosing not to emphasize the burden of
proof.  See id.

          Next,
James claims that Lowthorp did not admonish the jury that the two defendants
were to be considered separately, leaving this to Spain’s attorney.  However,
as set out above, Lowthorp addressed this during voir dire.  She further
clarified the matter when a venireman specifically asked if the two cases were
to be considered separately.

          Finally,
James claims that Lowthorp negatively affected the jury’s opinion of her when the
trial court had to correct her in front of the jury for becoming unnerved and
making nonlegal objections.  The only instance to which James directs us,
however, occurred outside the jury’s presence and, thus, could not have
prejudiced the jury.  We overrule James’s third issue.

V. 
Conclusion

          Having
overruled all of James’s issues, we affirm the trial court’s judgment.

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
DAUPHINOT
and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by
Assignment).

 

DAUPHINOT,
J. filed a dissenting opinion.



PUBLISH

 

DELIVERED:  December 8, 2011













 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00165-CR

 

 


 
 
 dwayne anthony james
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

DISSENTING
OPINION

----------

          The
majority does not address Appellant’s challenge to the trial court’s exclusion
of the cell phone’s SIM card and data saved to the cell phone’s hard drive
because the majority concludes that Appellant did not address the State’s
relevance objection.  Respectfully, I cannot agree.  The summary of the
argument in Appellant’s brief provides,

This evidence was
crucial to [Appellant’s] defense as they would likely have established that the
victim tampered with evidence by deleting relevant messages.  The trial court
should have erred on the side of caution and allowed defense counsel leeway to
explore more extensively the varying testimony, statements and actions of the
victim.  Omar’s statements regarding who and [how] many people were involved in
the shooting changed from the day he was shot through the day he testified in
court.  The information he gave police regarding his cell phone activity
morphed on the day of trial to include mysterious technical problems never
mentioned to police.

          The
argument portion of Appellant’s brief contains the following statement:  “Cell
phone communication was key in this case.”  Appellant then reiterates the
actions of Omar and the attempts of the police to determine the contents of the
cell phone and the SIM card.  He also reminds this court that when Omar was
questioned by defense counsel, he stated that he had had problems with his
phone deleting data and that he had told the detectives about the problem.  At
the same time, Appellant points out, Omar had told defense counsel that on the
day of the shooting, he had been making and receiving calls and text messages
all day and that the phone’s call log worked properly that day.

Appellant’s
brief then states:

As this Court opined
in Burleson v. State,. . . . “testifying to missing
information and not to specific content cannot be considered hearsay.” 
Allowing this information would have permitted defense counsel to cross
reference what information was stored on the phone when the police received it,
as compared to what calls and text messages [were] actually sent as per the
phone records, thus showing the jury that perhaps some information was removed
from the phone prior to police custody for a purpose.

          It
is true that Appellant did not cite to boilerplate language explaining what
relevant evidence is, but Appellant clearly explained the relevance, indeed the
importance, of the excluded evidence.  I would therefore hold that he does
address relevance.

          Additionally,
the statements of the trial court as well as the discussions of the lawyers
with each other and with the trial court show that the basis of the trial
court’s ruling was not relevance.  It is likely that the scholarly and
experienced trial judge concentrated on the hearsay objection to the exclusion
of the relevance objection because she is well aware that a relevance objection
is a general objection that is the same as no objection at all.[7]

          I
would address the merits of Appellant’s argument and determine whether the
excluded evidence was inadmissible hearsay.  Because the majority does not, I
respectfully dissent.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  December 8, 2011

 









[1]The jury subsequently
heard testimony from a police officer that a shooting, possibly committed by
Asian rappers, occurred outside Schuster’s home on August 4, 2008.





[2]Of these permissible
questions, defense counsel did not ask whether those with motive to harm Omar
would be the type to carry guns or to get into a fight, whether $2,000 is a lot
to kill someone over, whether the competitive nature of the business would be
motive for the defendants or someone else to harm Omar, whether the defendants
were willing to risk everything, or why Omar calls himself Segal.





[3]James claims that the
trial court excluded the videos based on the State’s authentication objection,
but this objection related to the SIM card testimony and not to the Project-a-Phone
data.





[4]The evidence at issue is
merely Omar’s testimony, not the actual YouTube video, which was never offered
into evidence.





[5]We count eight State
witnesses, three of whom both defense attorneys cross-examined and five of whom
Spain’s attorney cross-examined by himself.





[6]James filed a motion for
new trial, but he did not raise ineffective assistance of counsel in it;
therefore, we consider only the record before us when reviewing James’s
ineffective assistance of counsel complaint.





[7]See Barnard v. State,
730 S.W.2d 703, 716 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 929
(1988); Simpson v. State, 507 S.W.2d 530, 534 (Tex. Crim. App. 1974)
(“[I]t is simply and purely irrelevant to this proceeding.  Such an objection
is a general objection which is like no objection at all.”) (internal quotation
marks omitted).